**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH MANNING, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:23-cv-00210 |
| | ) | |
| v. | ) | |
| | ) | Hon. Judge Steven C. Seeger |
| McDONALD'S USA, LLC, et al., | ) | |
| | ) | |
| *Defendants*. | ) | **Jury Trial Demanded** |
| | ) | |
| | ) | |
| | ) | |

# NOTICE OF APPEAL

Notice is hereby given that all Plaintiffs in the above-named case (KENNETH MANNING, CHRISTINE CRAWFORD, KEITH MANNING, DELORES CRAWFORD, VAN JAKES, ANNIS ALSTON-STALEY, HARRY STALEY, ROBERT BONNER, LARRY BROWN, BENNY CLARK, ELEANOR CLARK, GLENDA CLAYPOOL, JUNETH DANIEL, YVES DOMINIQUE, WISE FINLEY, JACQUELINE GEORGE, ANTHONY GEORGE, WESLEY HALL, AL HARRIS, KRISTEN HARRIS, LAWRENCE HOLLAND, DOUGLAS HOLLIS, GLENNA HOLLIS, LAETITTIA JOHNSON, HAROLD LEWIS, JEREMY LEWIS, JOSEPH MBANEFO, SCOTT MILLER, DWIGHT MILLER, DAWN MUSSENDEN, WILLIAM RASUL, DWAYNE RICHARD JOHNSON, JEFFERY ROGERS, CARRIE SALONE, JEREMIAH SIMMONS, FLOYD SIMS, ALLEN STAFFORD, RONNIE THORNTON, ERROL THYBULLE, NORMAN WILLIAMS, LANCE WILLIAMS, JACQUELINE WYNN, MITHCELL MCGUIRE, LOIS MCGUIRE, GORDON THORNTON, SERGE TANCREDE, KAREN TANCREDE, and WILLIAM (PETE) WASHINGTON), by their attorneys, hereby

appeal to the United States Court of Appeals for the Seventh Circuit from the District Court's Memorandum Opinion and Order, entered in this action on September 21, 2026, dismissing Plaintiffs' complaint, Doc. No. 74, and all other orders made appealable by entry of final judgment.

By this appeal, Plaintiffs will ask the Court of Appeals to reverse the judgment, orders, and rulings of the District Court and grant such other relief as they may be entitled to on this appeal.

Dated: October 15, 2026

RESPECTFULLY SUBMITTED,

**KENNETH MANNING, ET AL.**

/s/ Steve Art
*One of Plaintiffs' Attorneys*

Jon Loevy
Dan Twetten
Steve Art
Quinn Rallins

Loevy & Loevy
311 N. Aberdeen, Third Floor
Chicago, Illinois 60607
(312) 243-5900
jon@loevy.com
dan@loevy.com
steve@loevy.com
rallins@loevy.com

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH MANNING, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 23-cv-210 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| McDONALD'S USA and | ) | |
| McDONALD'S CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Kenneth Manning and dozens of other black franchisees sued McDonald's, alleging pervasive race discrimination. They claim that McDonald's encouraged them to buy struggling stores in bad neighborhoods. And then, after the black franchisees bought the restaurants, McDonald's allegedly treated them unfavorably compared to white franchisees.

Collectively, Manning and the 47 other plaintiffs brought a whopping 480 claims against McDonald's. McDonald's moved to dismiss the second amended complaint.

For the reasons that follow, the motion to dismiss is granted in part and denied in part.

**Background**

The procedural history of this case has a few wrinkles, to put it mildly. This Court has on its docket two other cases against McDonald's involving black franchisees. *See King v. McDonald's*, 20-cv-5132 (N.D. Ill.); *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.). They involve similar claims about franchisees' experiences with McDonald's. And two of the cases share a common origin story.

The evolution of the case began with the filing of the complaint in the *King* case (which was formerly called the *Crawford* case). The complaint included four counts: (1) race discrimination when making, performing, enforcing, and terminating contracts in violation of section 1981; (2) breach of contract; (3) fraudulent inducement; and (4) a request for punitive damages. *See King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 1).

The complaint included wide-ranging allegations about discrimination against black franchisees. McDonald's allegedly steered Plaintiffs into purchasing underperforming restaurants in crime-ridden areas, and did so based on false pretenses. And then, McDonald's treated black franchisees worse than white franchisees, by offering less support and making

greater demands. In a nutshell, McDonald's allegedly set black franchisees up to fail, and denied them equal opportunity to succeed. And then, it showed them the door.

Plaintiffs made allegations about discriminatory conduct over a span of decades, so the statute of limitations became a big issue. Plaintiffs filed the complaint on August 31, 2020, but they entered into a tolling agreement with McDonald's on June 8, 2020. As a result, June 8, 2020, is an important date for the statute of limitations.

Plaintiffs later filed an amended complaint on November 16, 2020, and dropped the request for punitive damages as a freestanding count. The first amended complaint had three counts: (1) race discrimination involving contracts in violation of section 1981; (2) breach of contract; and (3) fraudulent inducement. *See King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30).

McDonald's moved to dismiss, based largely on the statute of limitations. On September 22, 2022, this Court delivered an oral ruling granting the motion to dismiss. *See* 9/28/22 Oral Ruling Tr., *King v. McDonald's*, No. 20-cv-5132 (N.D. Ill.) (Dckt. No. 68).[1] But this Court granted leave to amend, and plaintiffs later filed a second amended complaint on December 16, 2022.

Actually, they filed *two* second amended complaints. Plaintiffs decided to split between two different law firms. Some plaintiffs went with one law firm, and a second group of plaintiffs went with a different law firm.

Each group of plaintiffs filed different versions of the "second amended complaint" on the same docket. *See* Second Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 78); Second Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 79). So, a single case had two complaints, and each pleading claimed the mantle and called itself the second amended complaint.

A single case can't have more than one operative complaint at any given time. So this Court severed the case, and split it in two. *See* 1/11/23 Order, *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 83). That action created the *King* case and the *Manning* case. *See King v. McDonald's*, 20-cv-5132 (N.D. Ill.); *Manning v. McDonald's*, 23-cv-210 (N.D. Ill.).

Separately, Mitchell McPherson filed a case of his own in 2023. *See McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.).

The punchline is that there are three pending cases, including the *King* case (20-cv-5132), the *Manning* case (23-cv-210), and the *McPherson* case (23-cv-2913). *King* and *Manning* started out together (in 2020), and *McPherson* came later (in 2023).

---

[1] That transcript is captioned as the *Crawford* case, but that's the old name for the *King* case. *See* 1/11/23 Order, *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 83) ("The case is hereby severed. The *King* Complaint will stay put and remain with this case number (20-cv-5132). The *Manning* Complaint will have a new case number. The Court directs the Clerk's Office to open a new case, file the *Manning* Complaint (Dckt. No. 78 ) under that new case number, and designate the cases as related.").

The *King* plaintiffs and the *Manning* plaintiffs started out at the same place in the original complaint and in the first amended complaint. But they ended up in different places in their respective second amended complaints.

The *King* plaintiffs brought three claims in the second amended complaint: (1) race discrimination involving contracts under section 1981; (2) race discrimination involving property under section 1982; and (3) fraudulent concealment. *See* Second Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 79).

But the *Manning* plaintiffs branched out and filed 10 claims in the second amended complaint: (1) race discrimination involving contracts under section 1981; (2) pattern-or-practice race discrimination involving contracts under section 1981; (3) retaliation involving contracts under section 1981; (4) race discrimination involving the leasing of property under section 1982; (5) pattern-or-practice race discrimination involving the leasing of property under section 1982; (6) retaliation involving the leasing of property under section 1982; (7) breach of contract; (8) fraudulent concealment; (9) tortious interference with prospective economic advantage;[2] and (10) unjust enrichment. *See* Second Am. Cplt., *Manning v. McDonald's*, 23-cv-210 (N.D. Ill.) (Dckt. No. 2).[3]

Collectively, the cases haul a heavy payload. The *Manning* case has 48 plaintiffs. The *King* case has 31 plaintiffs. And the *McPherson* case involves only one plaintiff. That's 80 plaintiffs.

Each plaintiff brought multiple claims, too. For example, Kenneth Manning brought 10 claims. And so did each of the other plaintiffs in the *Manning* case. So, doing a little math, the *Manning* case contains 480 claims (48 plaintiffs x 10 claims per plaintiff). Each of the 31 plaintiffs in the *King* case brought three claims, too. That's 93 more claims.

Digesting the complaints was no small task. The second amended complaint in *King* is 132 pages long, and contains 836 paragraphs. The second amended complaint in *Manning* is 158 pages long, and contains 716 paragraphs. The *McPherson* complaint is 31 pages long.

As an aside, the *Manning* complaint pushed – if not crossed – the line of what's acceptable and manageable under the Federal Rules. The complaint is over 150 pages long, and contains over 700 paragraphs. It contains more paragraphs than the Gettysburg Address

---

[2] As explained below, the second amended complaint seemed to allege tortious interference with contract, not tortious interference with prospective economic advantage. But in response to the motion to dismiss, the *Manning* plaintiffs clarified that they're not bringing a claim of tortious interference with contract.

[3] The *Manning* plaintiffs filed the second amended complaint on the docket in the *King* case, and after this Court severed the case, that second amended complaint appeared on the docket in the *Manning* case. *See* Second Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 78) (the second amended complaint filed by the *Manning* plaintiffs, before severance); Second Am. Cplt., *Manning v. McDonald's*, 23-cv-210 (N.D. Ill.) (Dckt. No. 2) (the refiled version of the same pleading, after severance). So the same pleading appears on the docket of both cases. For the sake of clarity, this Court will cite to the version of the second amended complaint that appears on the docket in the *Manning* case.

contained *words*, by a wide margin. Even the stiffest cup of coffee cannot get a reader through a complete read without an intermission, and maybe a refill.

Every district court judge in the country has the same favorite word in the Federal Rules of Civil Procedure: "short." Rule 8 says that a complaint should be "short." *See* Fed. R. Civ. P. 8(a)(2). That rule exists for good reason. Brevity reduces costs, saves time, preserves judicial resources, and promotes the purpose of notice pleading.

Length has significant downsides. At some point, lengthy complaints serve too much to digest, and leave a throw-everything-at-the-wall-and-see-what-sticks aftertaste. A lengthy complaint makes one wonder if maybe, just maybe, a plaintiff is attempting to flood the zone, and get to the next stage of litigation by overwhelming everyone with the sheer volume of the allegations.

There's an old saying that quantity has a quality all to its own. Maybe the flipside is true, too, especially in litigation. At some point, a long brief is worse than a short brief. And a long complaint might be worse for everyone.

Even so, there are countervailing considerations, too. A complaint must contain enough facts to give rise to a plausible inference, and cannot rest on labels and conclusions. Rule 9(b) also raises the bar and requires particularity for fraud claims, too. And here, Plaintiffs allege fraudulent concealment. It's hard to write a short complaint that tells 48 separate stories.

The *Manning* complaint also pushed the boundaries when it comes to joinder. There are limits on the number of plaintiffs who can fit in one case. It's reminiscent of the old game of seeing how many people can fit in a phone booth. At some point, you hit a wall, and stuffing anything more into one space becomes completely impracticable.

The *Manning* complaint contains 48 plaintiffs. That's comfortably in the zone of what's acceptable for a class action. *See Mulvania v. Sheriff of Rock Island County*, 850 F.3d 849, (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement."); Rubenstein, *Newberg on Class Actions*, § 3:12 ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

Even so, any attempt to bring this case on a class-wide basis wouldn't have gone very far. The case isn't conductive to a class action, as even a cursory read of the complaint reveals. Each plaintiff has a unique story to tell, and the differences jump off the page. To be sure, there are some similarities and common questions. But if push came to shove, deciding the question of predominance wouldn't have consumed a lot of judicial resources.

Severance is a possibility (if not inevitable if the case makes it to trial). But severing the 48 plaintiffs into 48 freestanding cases at the motion-to-dismiss stage would have made things worse, not better. Deciding one big monster-sized motion is probably better than deciding 48 motions. Opening 48 cases doesn't feel like a time-saver.

Overall, the complaint is long, and the number of plaintiffs is high. But that's how it goes, and that's why this Court makes the little bucks. So this Court takes the complaint as it finds it, and dives in.

McDonald's filed a motion to dismiss in each case. There was a lot of ground to cover, given the number of plaintiffs, the number of claims, and the volume of pages.

This Court had to address each claim by each of the 48 plaintiffs one-by-one. Worse yet, the complaint includes allegations that stretch back decades, raising big questions about the statue of limitations. So, for many of the 480 claims, this Court had to address two questions: Is the claim timely? And does it state a claim?

This Court elected to tackle the project by addressing the motion to dismiss the complaint in *McPherson* first. After all, that case involves only one plaintiff. The idea was to issue a ruling in *McPherson*, and then use that ruling to winnow down the claims (as necessary) in the other two cases.

On March 27, 2026, this Court issued a 59-page ruling in the *McPherson* case, granting in part and denying in part the motion to dismiss. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

Specifically, this Court dismissed as untimely part of the differential-treatment claim under section 1981 (Count I) and under section 1982 (Count III). This Court also dismissed as untimely part of the pattern-or-practice discrimination claim under section 1981 (Count II) and under section 1982 (Count IV). This Court largely dismissed the breach-of-contract claim (Count V). And finally, this Court dismissed the tortious interference claim (Count VI).

The Court then convened a hearing with the parties and discussed the path forward. This Court explained that it planned to apply the rulings in *McPherson* to the claims in *King* and in *Manning*. *See* 4/28/26 Order, *King v. McDonald's*, 20-cv-5132 (Dckt. No. 131) ("As discussed at the hearing, this Court recently issued a ruling in *McPherson* that granted in part and denied in part Defendants' motion to dismiss *McPherson's* complaint. That ruling will go a long way toward resolving the motion to dismiss in this case, too, because the Plaintiffs raised similar claims, and the Defendants made similar arguments, in both cases. The principles that this Court adopted in its motion to dismiss ruling in *McPherson* will equally apply to the case at hand (to the extent that the claims are the same, anyway).").

In particular, this Court called attention to five overarching principles from *McPherson* that apply to *King* and to *Manning*, too. *Id.*

First, any individual pattern-or-practice claims are dismissed. *Id.* In *McPherson*, this Court ruled that individuals cannot bring pattern-or-practice claims. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43). A few months later, in a different case, the Seventh Circuit reached the same conclusion. *See Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026) ("The district court correctly recognized that once it had denied Plaintiffs' motion for class certification, Plaintiffs could no longer maintain their

*Teamsters* claims. *Teamsters* makes clear that a pattern and practice claim is conventionally brought as a class action.").

Second, the statute-of-limitations analysis from *McPherson* applies to any differential-treatment claims under section 1981. Specifically: (1) the claims are dismissed to the extent that they involve pre-contract-formation conduct that took place more than two years before the filing of the complaint; and (2) the claims are dismissed to the extent that they involve post-contract-formation conduct that took place more than four years before the filing of the complaint. *See* 4/28/26 Order, *King v. McDonald's*, 20-cv-5132 (Dckt. No. 131).

Third, the statute-of-limitations analysis from *McPherson* applies to any differential-treatment claims under section 1982. Specifically, the section 1982 claims are dismissed to the extent that they involve either pre-contract conduct or post-contract formation conduct that took place more than two years before the filing of the complaint. *Id.*

Fourth, in *McPherson*, this Court held that the continuing violation doctrine and equitable tolling did not apply to Plaintiff's untimely allegations under section 1981 or section 1982, because *McPherson's* allegations involved discrete acts of discrimination. The same principle applies in this case too, to the extent that Plaintiffs in this case seek to apply those doctrines based on discrete acts. *Id.*

Fifth, any breach-of-contract claims based on section 12 or section 15 of the franchise agreement are dismissed, assuming that each of the Plaintiffs made the same claim under the same provisions (unless one of the other Plaintiffs invokes different contractual language in those sections of the franchise agreement). But a claim for breach of contract under section 3 of the franchise agreement may survive, as long as Plaintiffs' allegations fall within Illinois's 10-year statute of limitations (unless there is some other flaw with the claim). *Id.*

The Court directed the parties to meet and confer about the applicability of *McPherson*. And in particular, this Court directed the parties to file a joint statement about the impact that *McPherson* has on the claims at issue in *King* and in *Manning*.

The parties later filed those joint statements in the *King* case and in the *Manning* case. *See* Joint Submission, *King v. McDonald's*, 20-cv-5132 (Dckt. No. 138); Joint Submission, *Manning v. McDonald's*, 23-cv-210 (Dckt. No. 72).[4] The parties submitted a helpful chart, and went plaintiff-by-plaintiff, and claim-by-claim. The parties reached an agreement on the viability of many of the claims in light of the ruling in *McPherson*. But the parties disagreed about some of the claims, too.

[4] The parties filed earlier versions of a chart, but it was not readable. *See King v. McDonald's*, 20-cv-5132 (Dckt. No. 98-2); *Manning v. McDonald's*, 23-cv-210 (N.D. Ill.) (Dckt. No. 22-1). It had the advantage of fitting everything into a few pages. But it had the disadvantage of being so small that no living person could read it.

That's the backstory. And now, the Court will complete the work on the motion to dismiss in the *Manning* case. This Court will go plaintiff-by-plaintiff, and claim-by-claim, and will issue a ruling on all remaining claims.

This Order will draw heavily on the Joint Submission by the parties about the impact of the ruling in *McPherson*. *See* Joint Submission (Dckt. No. 73). Any interested reader should give a close read to that Joint Submission.

To spare the reader, this Court will include most of the details and the analysis in the discussion of the claim by Plaintiff Manning. The rulings for the other Plaintiffs will be shorter (by design), and will rely in large part on that analysis.

In the end, the complaint was too much, and too little.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citation omitted; brackets in original).

A complaint must overcome the "plausibility standard," which "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Swanson v. Citibank, N.A.,* 614 F.3d 400, 405 (7th Cir. 2010) ("'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not. Indeed, the Court expressly distanced itself from the latter approach in *Iqbal*, 'the plausibility standard is not akin to a probability requirement.'") (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets in original).

A higher pleading standard applies to complaints that allege fraud. Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). A plaintiff must allege the "who, what, when, where, and how" of the circumstances surrounding the fraud. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citation omitted); *see also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009).

The statute of limitations is an affirmative defense, and a complaint does not have to plead around affirmative defenses. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). But a complaint can defeat itself, and a plaintiff can plead himself out of court.

District courts routinely consider the statute of limitations at the motion-to-dismiss stage when the complaint itself reveals that a claim is untimely. "[A] district court may dismiss on statute-of-limitations grounds where it is 'clear from the face of the amended complaint that it is hopelessly time-barred.'" *LJM Partners, Ltd. v. Barclays Cap., Inc.*, 165 F.4th 552, 562 (7th Cir. 2026); *see also Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009 ("[T]he statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'").

**Analysis**

Before getting into the specifics, it is worth a brief pause to see the big picture, and appreciate the hill that the complaint has to climb.

The complaint basically alleges that McDonald's engaged in a complex, nationwide, far-reaching, decades-long scheme to undermine black franchisees and remove them from the McDonald's system. The allegations have the feel of a vast nationwide conspiracy.

"The required level of factual specificity rises with the complexity of the claim." *See McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011); *see also Swanson v. Citibank, N.A.,* 614 F.3d 400, 405 (7th Cir. 2010) ("A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

As another court put it in a similar case, "A more complex case will require more detail. To put it mildly, the Plaintiffs have alleged a massive, complex case of discrimination commencing decades ago, extending across the nation, that has personally impacted hundreds of African-American McDonald's franchisees." *See Byrd v. McDonald's USA, LLC*, 2021 WL 2329369, at *4 (N.D. Ill. 2021) (Leinenweber, J.). The same holds true here.

## I. Kenneth Manning (Plaintiff #1)

Manning entered McDonald's system on March 30, 2001, and exited McDonald's system on March 1, 2017. He brings 10 claims.

**Count I** is a race discrimination claim about contracts under section 1981. The statute of limitations is two years for pre-contract-formation conduct, and four years for post-contract-formation conduct. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

Count I is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

As a reminder, the parties entered into a tolling agreement on June 8, 2020, and Plaintiffs filed the complaint in the *King* case (again, which was originally called the *Crawford* case) on July 10, 2020. The tolling agreement explains why the statute of limitations stretches back to June 8, 2016 (not July 10, 2016). That date is four years before the signing of the tolling agreement on June 8, 2020.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and March 1, 2017, when Manning left the system. The question is whether the complaint includes allegations that state a claim.

Section 1981(a) prohibits race discrimination when making, enforcing, and terminating contracts. The statute provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." *See* 42 U.S.C. § 1981(a). The statute "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship." *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

To state a discrimination claim under section 1981, a plaintiff must allege that the defendant "had the intent to discriminate on the basis of race," and that "the discrimination concerned the making or enforcing of a contract." *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006).

A plaintiff "must plead that, but for his race, he would not have suffered the loss of a legally protected right to make and enforce a contract." *See Miao v. United Airlines, Inc.*, 164 F.4th 622, 625 (7th Cir. 2026). A plaintiff must "allege enough facts to allow for a plausible inference" that the defendant "impaired his right to enforce a contract because of race." *Id.* at 626; *see also Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 589 U.S. 327, 341 (2020) ("To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.").

Section 1981 only covers instances of purposeful discrimination. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982). A plaintiff also must plead but-for causation. *See Comast*, 589 U.S. at 331–41.

Some cases also say that a plaintiff must allege that he "is a member of a racial minority." *See Pourghoraishi*, 449 F.3d at 756. But it's hard to see how that requirement could survive the Supreme Court's decision in *Ames v. Ohio Department of Youth Services*, 605 U.S. 303, 310 (2025).

After all, the statute protects everybody, and everyone has a race. "[E]veryone has a race, and in that sense, *everyone* is a member of a protected class. . . . Saying that someone is a member of a protected class doesn't say anything, because the circle of protection covers everyone. Asking if a person is a member of a protected class in a race-discrimination case isn't much better than asking if a person is a person." *See Reese v. Hub Group Inc.*, 2026 WL 558111, at *12 (N.D. Ill. 2026) (emphasis in original); *see also Galbreath v. Help at Home, LLC*, 2025 WL 919574, at *5 (N.D. Ill. 2025) ("By the look of things, the Seventh Circuit hasn't addressed a section 1981 claim and restated the element of membership in a racial-minority group since 2006 (in *Pourghoraishi*). Maybe someday the Seventh Circuit will give it another look.").

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and March 1, 2017. Most of the allegations in the complaint predate that period, so they're untimely.

The amended complaint does allege that McDonald's blocked a sale to someone else (Ed Gerena). *See* Second Am. Cplt., at ¶ 162 (Dckt. No. 2). But the pleading does not allege facts giving rise to a plausible inference that McDonald's blocked that sale for race-based reasons. The same conclusion applies to the allegation that McDonald's encouraged the sale to other potential buyers, all of whom were white.

A conclusory allegation isn't enough. Rule 8 demands more than this type of "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949, 1954; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("[Conclusory] statements [ ] do not add to the notice that Rule 8 demands.").

Manning alleges that he wanted to sell to someone, but McDonald's stood in the way and encouraged him to sell to potential white buyers. That's not enough to raise a plausible inference of discriminatory intent. Pointing to the race of the buyers preferred by McDonald's won't cut it. The complaint must do more than allege that McDonald's encouraged a sale to buyers who were white. An inference of discrimination must rest on something more than the race of the buyer favored by McDonald's.

"[T]he complaint alleges discriminatory intent in a wholly conclusory fashion, so dismissal was proper under the pleading standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and amplified in *Iqbal.*" *See McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 877 (7th Cir. 2012); *see also*

*Bowes-Northern v. JPMorgan Chase Bank N.A.*, 2022 WL 2237146, at *5 (N.D. Ind. 2022) ("In the context of § 1981, a plaintiff cannot state an adequate claim merely by alleging the defendant knew of their race and denied them a service, and then conclusively asserting the denial was motivated by discrimination.").

The complexity of the scheme underscores the need for specifics. Plaintiffs allege a complex, conspiracy-like scheme by McDonald's to give the shaft to black franchisees across the country. "This is a complex discrimination claim, and we have observed that under *Iqbal* and *Twombly*, '[t]he required level of factual specificity rises with the complexity of the claim.'" *McReynolds*, 694 F.3d at 887 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011)).

Plaintiffs fall short of satisfying that high standard. The complaint is long on general themes and short on specific facts showing discriminatory intent.

Manning does not allege but-for causation, either. *See Comcast*, 589 U.S. at 341 ("To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."); *Mir v. State Farm Mut. Auto. Ins. Co.*, 847 F. App'x 347, 350 (7th Cir. 2021). At best, Manning alleges that he "began negotiations" with a potential buyer about a sale of his restaurants. *See* Second Am. Cplt., at ¶ 162 (Dckt. No. 2). Manning does not allege sufficient facts to give rise to a plausible inference that, but-for discrimination by McDonald's, Manning would have sold his restaurants to his preferred buyer.

Count I is dismissed as untimely for the period before June 8, 2016. For the allegations after that date, the claim is dismissed for failure to state a claim.

**Count II** is a pattern-and-practice claim about contracts under section 1981. Count II is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** is a retaliation claim about contracts under section 1981. The statute of limitations is two years for pre-contract-formation conduct, and four years for post-contract-formation conduct. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

Count III is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and March 1, 2017. The question is whether the complaint includes allegations that state a claim.

The Supreme Court has held that "42 U.S.C. § 1981 encompasses claims of retaliation." *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). To state a retaliation claim, a plaintiff must plead "(1) a statutorily protected activity; (2) a materially adverse action

taken by the [contracting party]; and (3) a causal connection between the two." *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and March 1, 2017. The amended complaint does allege a few instances of purported retaliation. But the conduct in question took place in January 2012 and in the fall of 2013. *See* Second Am. Cplt., at ¶¶ 150, 155 (Dckt. No. 2).

Manning also alleges that he complained about race discrimination in 2017, when he was attempting to sell his stores. *Id.* at ¶ 163. But Manning does not allege that McDonald's retaliated against him for making those complaints.

Count III is dismissed in its entirety.

**Count IV** is discrimination claim about leasing property under section 1982. The statute of limitations is two years for both pre-contract-formation conduct and post-contract-formation conduct. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

Count IV is dismissed as untimely in its entirety.

**Count V** is a pattern-and-practice claim about leasing property under section 1982. Count V is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count VI** is a retaliation claim about leasing property under section 1982. The statute of limitations is two years. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

Count VI is dismissed as untimely in its entirety.

**Count VII** is a breach-of-contract claim. The statute of limitations is 10 years. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

Count VII is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and March 1, 2017. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 of the franchise agreement says that "McDonald's shall also make available to Franchisee all additional services, facilities, rights, and privileges relating to the operation of the Restaurant which McDonald's makes generally available, from time to time, to all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Manning alleges that McDonald's prevented him from "buying profitable stores back in the future from his brother, though that had not originally been part of the franchise agreement or contingency in the deal." *See* Second Am. Cplt., at ¶ 145 (Dckt. No. 2). That allegation can't

give rise to a claim. Section 3 is about "the operation of the Restaurant." Buying *other* stores doesn't fall within that category.

Next, Manning alleges that McDonald's put him on a more rigorous rebuild schedule for his restaurants compared to restaurants run by white owner-operators. *Id.* at ¶¶ 146–47. Manning also alleges that McDonald's subjected him to excessive inspections.

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant. Section 3 does not sweep so broadly that McDonald's must treat every franchisee the same way across the board. (As an aside, it's hard to see how equal inspections could make sense in the restaurant industry, which deals with food safety. Not all restaurants are on a level playing field when it comes to cleanliness – some restaurants are cleaner than others. A franchisor might have good reason to inspect some restaurants more than others.).

Section 3 does not give a franchisee a contractual right or a privilege to be free from more inspections than other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect), for the reasons stated in *McPherson*.

Section 12 of the franchise agreement says that "McDonald's shall have the right to inspect the Restaurant at all reasonable times to ensure that Franchisee's operation thereof is in compliance with the standards and policies of the McDonald's system." *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). The contract imposes a duty on franchisees to "[o]perate the Restaurant in a clean, wholesome manner in compliance with prescribed standards of Quality, Service, and Cleanliness." *Id.* at § 12(a).

Section 12 gives McDonald's the right to inspect the franchisee's restaurant at reasonable times, but it doesn't say anything about McDonald's having a duty to *not* inspect the restaurant at other times. *See* 9/28/22 Oral Ruling Tr., at 27:9-17, *King v. McDonald's*, No. 20-cv-5132 (N.D. Ill. 2022) (Dckt. No. 68) ("That section only imposed obligations on the plaintiffs to maintain up-to-date and compliant restaurants. It did not require McDonald's to inspect or not inspect the properties. It did not require McDonald's to impose or not impose certain renovation requirements.").

McDonald's has the "right" to inspect the restaurants and do whatever it takes to "ensure" that the franchisee is passing muster. The franchisee has a duty to comply, and has no right to stop it.

Section 12 doesn't prevent McDonald's from doing unreasonable inspections. That is, section 12 does not place a cap on the number of times that McDonald's can inspect a restaurant. It doesn't prevent McDonald's from inspecting a restaurant an unreasonable number of times, or

prevent McDonald's from bring unreasonably picky during inspections. Section 12 says nothing about the number, the manner, or the intensity of the inspections.

Instead, section 12 vests McDonald's with vast discretion to make sure that its franchisees are living up to the high standards of McDonald's. The text of section 12 includes only one restriction: McDonald's can inspect at "reasonable times." *See* Franchise Agreement, at § 12 (Dckt. No. 2-1).

Section 12 certainly doesn't give the franchisee a right to put on the brakes and call a halt to an inspection if it thinks that McDonald's is inspecting his or her restaurants too much. That's a recipe for chaos (and unclean restaurants).

Simply put, the phrase "at reasonable times" does not mean "a reasonable number of times," or "with reasonable frequency," or "in a reasonable manner." The only restriction in the contract is about the timing. So, 3:00 a.m. on Christmas morning won't cut it.

"Section 12 entitles McDonald's to inspect the restaurants at reasonable times. It does not prohibit McDonald's from inspecting the restaurants at other times. Section 12 may not vest McDonald's with an absolute right to inspect the restaurants whenever it wants. But section 12 does not include rights-vesting language in favor of the franchisee, either." *See* 3/27/26 Order, at 51, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and March 1, 2017.

Section 15(d) of the franchise agreement says that "Franchisee shall not sell, transfer, or assign this Franchise to any person or persons without McDonald's prior written consent." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1). But it also provides that "[s]uch consent shall not be arbitrarily withheld." *Id.*

The complaint does not allege facts giving rise to a plausible inference that McDonald's blocked a sale on the basis of race. The complaint does allege that Manning "began negotiations" with Gerena, and that McDonald's "blocked the sale." *See* Second Am. Cplt., at ¶ 162 (Dckt. No. 2). But the complaint stops short of alleging facts that McDonald's did so based on race, except in conclusory fashion. The allegations are too conclusory to support a claim. The complaint does not allege but-for causation, either.

**Count VIII** is a fraudulent concealment claim. The statute of limitations is five years. *See* 735 ILCS 5/13-215.

Count VIII is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and March 1, 2017. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

"In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *See Toulon v. Continental Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017).

"The duty to disclose arises only in certain situations, including where the 'plaintiff and defendant are in a fiduciary or confidential relationship' and 'where plaintiff places trust and confidence in defendant thereby placing defendant in a position of influence and superiority over plaintiff.'" *See Squires-Cannon v. Forest Preserve Dist. of Cook County*, 897 F.3d 797, 805 (7th Cir. 2018).

Here, Plaintiffs allege that McDonald's made false statements about "availability of franchise locations, the past, present or reasonably anticipated future performance or profitability of franchise locations, the physical conditions of franchise locations, and the general availability or lack of general availability of various services, facilities, rights, and privileges that were available to other franchisees." *See* Second Am. Cplt., at ¶ 823 (Dckt. No. 2). Plaintiffs allege that they relied on those false statements "in making the decision to enter into the franchisor/franchisee contractual relationship," in "selecting or accepting franchise locations," and in seeking various services and benefits.

The fraudulent concealment claim fails, for at least four reasons.

First, the complaint is untimely to the extent that it involves any false statements made before entering into the franchisor-franchisee relationship. Manning became a franchisee in 2001, but did not file suit until 2020.

Second, under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

Third, the franchise agreement forecloses any claim about misrepresentations or omissions about the profitability of the restaurants. "No representation has been made by McDonald's as to the future profitability of the Restaurant." *See* Franchise Agreement, at § 28(c) (Dckt. No. 2-1).

Fourth, a plaintiff must satisfy the heightened pleading standard of Rule 9(b) when bringing a fraudulent concealment claim. *See Squires-Cannon*, 897 F.3d at 805. Manning has failed to allege the who, what, when, where, and how of the alleged fraud.

**Count IX** is a claim of tortious interference with prospective economic advantage. The statute of limitations is five years. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

Count IX is dismissed as untimely for any tortious interference that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Plaintiffs did not raise a tortious interference claim in the original complaint filed on August 31, 2020, or in the first amended complaint filed on November 16, 2020. The original

complaint had four counts: (1) violation of section 1981; (2) breach of contract; (3) fraudulent inducement; and (4) a request for punitive damages. *See King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 1). The first amended complaint had three counts: (1) violation of section 1981; (2) breach of contract; and (3) fraudulent inducement. *See King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30).

Plaintiffs raised a tortious interference claim for the first time in the second amended complaint on December 16, 2022. Plaintiffs filed that second amended complaint in the *King* case (20-cv-5132), before the case was severed. The second amended complaint was refiled in the *Manning* case under a new case number (23-cv-210) on January 20, 2023.

Under Illinois law, a tortious interference claim has a limitations period of five years. So, any claim is time-barred for any conduct before December 16, 2017 (meaning five years before the filing of the second amended complaint on December 16, 2022), unless relation-back applies.

Under Rule 15(c)(1)(B), an amended complaint relates back to the date of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c) "relaxes, but does not obliterate, the statute of limitations." *See Mayle v. Felix*, 545 U.S. 644, 659 (2025).

The central inquiry under Rule 15(c) is whether the original complaint "gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006). "Even 'significant' changes to a complaint or to a class definition can relate back so long as the defendant had fair notice of the substance of the new allegations from the outset." *See Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005).

"A new legal theory may therefore relate back if it is tethered to the same core of operative facts." *See Elliott v. Village of Wayne*, 2026 WL 705746, at *3 (N.D. Ill. 2026). "Even where an amendment 'invoke[s] a legal theory not suggested by the original complaint and relie[s] on facts not originally asserted,' relation back is in order '[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts.'" *See Coleman v. United States*, 79 F.4th 822, 829 (7th Cir. 2023) (quoting *Mayle v. Felix*, 545 U.S. 644, 664 (2005)).

In the second amended complaint, Plaintiffs allege that McDonald's interfered with their existing business relationships with third parties. As franchisees, Plaintiffs "had valid business relationships with one or more individuals or entities, including but not limited to business loans or financing provided by financial institutions or investors." *See* Second Am. Cplt., at ¶ 828 (Dckt. No. 2). Plaintiffs allege that McDonald's "intentionally interfered with these business relationships . . . through their racially discriminatory conduct and breach of contract." *Id.* at ¶ 830.

The original complaint and the first amended complaint do not mention anything about business relationship with lenders. For example, Plaintiffs didn't allege that McDonald's interfered with their relationships with banks, or frustrated their attempt to get business loans.

But Plaintiffs did allege that McDonald's interfered with their relationships with potential buyers, meaning potential purchasers of the stores themselves. "Plaintiffs with interested buyers were blocked by McDonald's, who had final approval in 'qualifying' buyers. McDonald's rejected Plaintiffs' potential buyers without any legitimate business justification." *See* Cplt., at ¶ 171, *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 1).

The second amended complaint continued that thread. Time and again, Plaintiffs allege that McDonald's interfered with their attempt to sell their stores to potential buyers. *See* Second Am. Cplt., at ¶ 828, *Manning v. McDonald's*, 23-cv-210 (Dckt. No. 2); *see also id.* at ¶ 121 ("In spite of McDonald's stacking the odds against them, Plaintiffs attempted to overcome these financial hurdles by purchasing more franchise locations and growing their businesses. But once again, McDonald's intentional race discrimination prevented their success. McDonald's routinely blocked Black owner/operators from purchasing white franchisees' locations by refusing to sign off on those deals.").

The amended complaint arises out of the same "conduct, transaction, or occurrence" as the original complaint when it describes the inability to sell the stores to certain potential buyers. *See* Fed. R. Civ. P. 15(c)(1)(B). McDonald's heard that theory from day one, so it isn't a surprise.

So the tortious interference claim in the second amended complaint relates back to the filing of the original complaint filed on August 31, 2020 (actually, to the tolling agreement on June 8, 2020) in part. The tortious interference claim relates back to the extent that it alleges that McDonald's interfered with a potential sale to third parties.

The amended complaint doesn't relate back to the extent that it alleges interference with potential business loans. Those allegations didn't appear in the original or in the first amended complaint. Those allegations don't relate back, so the five-year clock started on the date of the filing of the second amended complaint on December 16, 2022 (*i.e.*, so anything before December 16, 2017 is untimely).

More specifically, the tortious interference claim is timely to the extent that it alleges attempts to sell the stores to potential buyers after June 8, 2015, meaning five years before the tolling agreement on June 8, 2020. The tortious interference claim is timely to the extent that it alleges interference with business loans before December 16, 2017, meaning five years before filing the second amended complaint on December 16, 2022.

As an aside, the second amended complaint includes allegations about business relationships with lenders in Count IX itself. But that allegation seems to come out of nowhere. The second amended complaint includes over 750 factual paragraphs, and as far as this Court can tell, Plaintiffs didn't allege that McDonald's interfered with business loans from banks or other

lenders. So, maybe pinning down the statute of limitations for any loan-based theory is a moot point.

Manning exited the McDonald's system on March 1, 2017. Any tortious interference claim about a potential sale of his stores to other buyers is timely for the period from June 8, 2015, to March 1, 2017. Any tortious interference claim about any business loans is untimely because he left the system on March 1, 2017, more than five years before the filing of the second amended complaint on December 16, 2022.

The claim fails for another reason, too. By the look of things, the second amended complaint alleged tortious interference with contract, not tortious interference with prospective economic advantage. Plaintiffs alleged that they "had valid business relationships with one or more individuals or entities," and that McDonald's interfered with those relationships. *See* Second Am. Cplt., at ¶ 828 (Dckt. No. 2).

Plaintiffs seemed to shift gears in response to the motion to dismiss. Plaintiffs characterized the claim as tortious interference with prospective economic advantage, not tortious interference with contract. *See* Resp. Brf., at 37 (Dckt. No. 30).

As the names suggest, tortious interference with contract is different than tortious interference with prospective economic advantage. One claim is about an existing contract, and the other claim is about a potential future contract. *See Allstate Ins. Co. v. Ameriprise Fin. Servs., Inc.*, 2023 WL 5334638, at *31 (N.D. Ill. 2023) ("Tortious interference with contract is about a third-party's interference with an *existing* contract. On the other hand, tortious interference with prospective economic advantage is about a third party's interference with a *reasonable expectation* of a business relationship.") (citations omitted; emphasis in original).

In their response brief, Plaintiffs make clear that they're alleging tortious interference with prospective economic advantage, not tortious interference with contract. This Court will hold Plaintiffs to that reading. That's a generous reading. And maybe, just maybe, it's an overly generous reading. But the Court will give Plaintiffs the benefit of the doubt.[5]

Even so, the allegations of the complaint do not state a claim of tortious interference with prospective economic advantage. To state a claim of tortious interference with prospective economic advantage, a plaintiff must allege "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damages to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015); *see also Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 508 (7th Cir. 2007); *Grako v. Bill Walsh Chevrolet-*

---

[5] A plaintiff cannot amend a complaint in a response brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Comp.*, 631 F.3d 436, 448 (7th Cir. 2011); *Help At Home Inc. v. Medical Capital, LLC*, 260 F.3d 748, 752 (7th Cir. 2001). Even so, this Court will give the second amended complaint a generous reading on this issue, especially given that it doesn't change the outcome.

*Cadillac, Inc.*, 229 N.E.3d 869, 874–75 (Ill. App. Ct. 2023); *Voyles v. Sandia Mortg. Co.*, 751 N.E.2d 1126, 1133 (Ill. 2001).

Manning alleges that he "tried to sell his stores in 2017," and "began negotiations with Ed Gerena, who wanted to buy all 16 stores." *See* Second Am. Cplt., at ¶ 162 (Dckt. No. 2). He alleges that McDonald's "blocked the sale" to Gerena, and put forward the names of other potential buyers, "all of whom were white." *Id.* at ¶¶ 162–63.

The franchise agreement gave McDonald's the express contractual right to approve a sale to anyone else. Manning could not sell the business to a third party "without McDonald's prior written consent," which "shall not be arbitrarily withheld." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1).

The allegations do not state a claim, for two reasons. First, the complaint does not include sufficient facts that give rise to a plausible inference that McDonald's disapproved a potential buyer, and promoted other potential buyers, based on race. The allegations are conclusory.

Second, the claim requires a reasonable expectation of entering into a business relationship. *See Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022). A reasonable expectancy requires "more than the hope or opportunity of a future business relationship." *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machs. Corp.*, 520 F. Supp. 2d 1012, 1022 (N.D. Ill. 2007) (citing *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1300 (1996)), *aff'd*, 547 F.3d 882 (7th Cir. 2008); *see also Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1154 (N.D. Ill. 2016).

Here, Manning alleges that he "began negotiations" with a potential buyer. That's not enough to rise to the level of a reasonable expectancy of a contract. *See Data Mgmt. Assoc. Int'l v. Enterprise Warehousing Solutions, Inc.*, 2022 WL 16856414, at *6 (N.D. Ill. 2022) ("At best, EWS's claims reflect a desire 'to garner new business opportunities' with the European Entities. That is insufficient to state a tortious interference claim.") (citation omitted); *Davidson v. Schneider*, 2014 WL 656780, at *6 (N.D. Ill. 2014) ("Davidson's 'mere hope' of additional business with Hill does not constitute a reasonable expectancy.").

For those reasons, the tortious interference with prospective economic advantage claim (Count IX) is dismissed.

**Count X** is an unjust enrichment claim. The statute of limitations is five years. *See* 735 ILCS 5/13-205.

Count X is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim.

To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's

retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989).

"A plaintiff may not recover under an unjust enrichment theory if there is an enforceable contract that governs the relevant subject matter." *See Hernandez v. Illinois Institute of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023); *see also Cohen v. American Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("In Illinois recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant."); *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 541 (7th Cir. 2008) (citation omitted) ("Illinois law is again clear: damages for unjust enrichment are not awardable when, as here, there is a contract between the parties on the subject in dispute."); *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004) ("When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract."); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("[I]n Illinois, quasi-contractual relief is available only where there is no express contract between the parties.").

All too often, an unjust enrichment claim involves wrongful conduct. "Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. What makes the retention of the benefit unjust is often due to some improper conduct by the defendant." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

But wrongful conduct isn't the only path for an unjust enrichment claim. Other possibilities include a "benefit mistakenly conferred," or "a benefit to which plaintiff has a better claim than the defendant for some other reason." *See In re Sears, Roebuck & Co. Tools Mktg. and Sales Prac. Litig.*, 2006 WL 3754823, at *4 (N.D. Ill. 2006); *see also Nat'l Amer. Ins. Co. v. Indiana Lumbermens Mut. Ins. Co.*, 2000 WL 975176, at *2 (7th Cir. 2000) ("As to the 'unjustness' of the enrichment, in cases where a third party transferred a benefit to the defendant, to show that the retention of the benefit constitutes unjust enrichment the plaintiffs must initially show that: (1) the benefit should have been given to the plaintiffs but the third party mistakenly gave it to the defendants; (2) the defendants procured it from the third party by some type of wrongful conduct; or (3) the plaintiffs for some reason have a better claim to the benefit than the defendants."); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 161 (1989).

Here, the second amended complaint alleges that McDonald's "induced Plaintiffs to make substantial repairs, renovations, and other improvements to their restaurants." *See* Second Am. Cplt., at ¶ 833 (Dckt. No. 2). As Plaintiffs see things, McDonald's obtained a "significant benefit" from those improvements because McDonald's owned the properties.

Those allegations cannot give rise to a claim. The complaint alleges that Plaintiffs and McDonald's entered into binding franchise agreements. Those contracts governed their relationship, including maintenance of the property.

In fact, a section of the franchise agreement expressly covers the "uniformity of facilities," and the "right to inspect the Restaurant at all reasonable times to ensure that Franchisee's operation thereof is in compliance with the standards and policies of the McDonald's System." *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). The contract required Plaintiffs to "maintain the building . . . in a good, clean, wholesome condition and repair," and "[m]ake repairs or replacements required." *Id.* at § 12(a), (d). Each franchisee agreed to "comply with the entire McDonald's System," and keep the restaurant "in compliance with designated standards." *Id.* at § 12, 12(a).

The existence of the contract means that unjust enrichment has no void to fill. True, a plaintiff can plead in the alternative, but that's not what happened here. Everyone agrees that a contract existed, so Manning cannot bring an unjust enrichment claim about his business relationship with McDonald's. The unjust enrichment claim is dismissed.

## II. Christine Crawford (Plaintiff #2)

Crawford entered McDonald's system on August 26, 2005, and exited McDonald's system on March 1, 2018. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and March 1, 2018, when Crawford exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and March 1, 2018. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 196–200 (Dckt. No. 2). Crawford alleges that McDonald's rejected her list of potential buyers, and in the end, Crawford sold the restaurants to a "white owner/operator McDonald's had hand-picked." *Id.* at ¶ 200.

That allegation is too thin and too conclusory to support an inference of a discriminatory purpose. The mere fact that McDonald's preferred a sale to another buyer, who was white, cannot give rise to an inference of discrimination. The race of the preferred buyer, standing alone, isn't enough. An inference of discrimination must rest on something more than the race of the buyer favored by McDonald's. The complaint does not allege but-for causation, either.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and March 1, 2018. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and March 1, 2018. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

"[P]rotected activity is some step in opposition to a form of discrimination that the statute prohibits." *See Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (citing *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011)). So, a retaliation claim under section 1981 requires a plaintiff to have spoken up about discrimination in connection with contracts. And a retaliation claim under section 1982 requires a plaintiff to have spoken up about discrimination in connection with property.

In Title VII cases, "[f]iling a charge with the EEOC about the alleged discrimination is the most obvious form of statutorily protected activity." *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 740 (7th Cir. 2011); *see also Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023) ("An employee engages in a protected activity by either: (1) filing a charge, testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Title VII or other employment statutes; or (2) opposing an unlawful employment practice.") (citation omitted). But "informal complaints can count," too. *See Sanders v. Commonwealth Edison Co.*, 806 F. Supp. 3d 808, 821 (N.D. Ill. 2025).

No matter what form the complaint takes, it "must be about the discrimination." *See McHale v. McDonough*, 41 F.4th 866, 871 (7th Cir. 2022). "Merely complaining in general terms of harassment or discrimination, without specifying a connection to a protected class or providing facts to create such an inference, is insufficient." *Id.* (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)); *see also Cole v. Bd. of Trustees of N. Illinois Univ.*, 838 F.3d 888, 901 (7th Cir. 2016) ("To be protected under Title VII, [the] complaint must have indicated the discrimination occurred because of sex, race, national origin, or some other protected class.") (quoting *Tomanovich*, 457 F.3d at 663).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's rejected their list of preferred buyers for their restaurants. *See* Second Am. Cplt., at ¶¶ 196–200 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and March 1, 2018. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Here, Crawford alleges that McDonald's refused her request for rent relief and other financial assistance, which McDonald's provided to other franchisees. That's a claim. *See* Second Am. Cplt., at ¶¶ 191–95 (Dckt. No. 2). Crawford also raises allegations about security issues and labor costs, but does not allege that McDonald's refused to provide generally applicable services. So that's not a claim.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and March 1, 2018.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Crawford alleges that McDonald's did not approve a sale to Plaintiff's preferred buyer. *See* Second Am. Cplt., at ¶¶ 197–200 (Dckt. No. 2). That's not a claim. McDonald's had the express contractual right to approve or disapprove potential buyers, as long as the consent is not "arbitrarily withheld." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1).

The complaint does not contain sufficient facts to give rise to a plausible inference that McDonald's blocked a sale to a prospective buyer and favored a white buyer on the basis of race. A complaint cannot rest on conclusory allegations. Pointing to the race of the buyers preferred by McDonald's won't cut it, either. The complaint must do more than allege that McDonald's encouraged a sale to buyers who were white.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and March 1, 2018 The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and March 1, 2018, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and March 1, 2018, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## III. Delores Crawford (Plaintiff #3)

Crawford entered McDonald's system on November 1, 1987, and exited McDonald's system on March 1, 2018. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and March 1, 2018, when Crawford exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and March 1, 2018. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 196–200 (Dckt. No. 2). Crawford alleges that McDonald's rejected her list of potential buyers, and in the end, Crawford sold the restaurants to a "white owner/operator McDonald's had hand-picked." *Id.* at ¶ 200.

That allegation is too thin and too conclusory to support an inference of a discriminatory purpose. The mere fact that McDonald's preferred a sale to another buyer, who was white, cannot give rise to an inference of discrimination. The race of the preferred buyer, standing alone, isn't enough. An inference of discrimination must rest on something more than the race of the buyer favored by McDonald's. The complaint does not allege but-for causation, either.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and March 1, 2018. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and March 1, 2018. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's rejected their list of preferred buyers for their restaurants. *See* Second Am. Cplt., at ¶¶ 196–200 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and March 1, 2018. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Here, Crawford alleges that McDonald's refused her request for rent relief and other financial assistance, which McDonald's provided to other franchisees. That's a claim. *See* Second Am. Cplt., at ¶¶ 191–95 (Dckt. No. 2). Crawford also raises allegations about security issues and labor costs, but does not allege that McDonald's refused to provide generally applicable services. That's not a claim.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and March 1, 2018.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Crawford alleges that McDonald's did not approve a sale to Plaintiff's preferred buyer. *See* Second Am. Cplt., at ¶¶ 197–200 (Dckt. No. 2). That's not a claim. McDonald's had the express contractual right to approve or disapprove potential buyers, as long as the consent is not "arbitrarily withheld." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1).

The complaint does not contain sufficient facts to give rise to a plausible inference that McDonald's blocked a sale to a prospective buyer and favored a white buyer on the basis of race. A complaint cannot rest on conclusory allegations. Pointing to the race of the buyers preferred by McDonald's won't cut it, either. The complaint must do more than allege that McDonald's encouraged a sale to buyers who were white.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and March 1, 2018. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and March 1, 2018, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and March 1, 2018, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## IV. Keith Manning (Plaintiff #4)

Manning entered McDonald's system on September 18, 1992, and exited McDonald's system on December 1, 2017. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and December 1, 2017, when Manning exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and December 1, 2017. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 175–78 (Dckt. No. 2). Manning alleges that McDonald's pressured him to renovate his stores, and enforced its renovation standards "more stringently on Manning, as compared to white owner/operators, solely because of his race." *Id.* at ¶ 175. That allegation is too conclusory to support a claim.

Manning also complains about McDonald's modernization program called Bigger Bolder Vision 2020, which favored franchisees with more stores and franchisees who could afford renovations. *See* Second Am. Cplt., at ¶¶ 16–17, 101–03, 123 (Dckt. No. 2).

Manning alleges that the Bigger Bolder program had a disparate impact on black franchisees. *Id.* at ¶ 175. But a claim under section 1981 requires purposeful discrimination, so an allegation of disparate impact is not enough. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination."); *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) ("In order to prevail under § 1981, a plaintiff must prove

purposeful discrimination."); *Franklin v. City of Evanston*, 384 F.3d 838, 848 (7th Cir. 2004) ("[E]qual protection claims, like § 1981 claims, require a showing of discriminatory treatment and cannot be supported by proof of disparate impact."); *Little v. JB Pritzker for Governor*, 2021 WL 3666429, at *14 n.11 (N.D. Ill. 2021) ("Intentional discrimination claims under § 1981 cannot be supported by evidence of disparate impact."); *Mozee v. American Commercial Marine Service Co.,* 940 F.2d 1036, 1051 (7th Cir. 1991) ("[D]isparate impact does not support section 1981 liability since intentional discrimination is required."); *Melendez v. Illinois Bell Tel. Co.*, 867 F. Supp. 637, 644 (N.D. Ill. 1994), *aff'd*, 79 F.3d 661 (7th Cir. 1996) ("The critical element in a Section 1981 claim is a showing of intentional discrimination.").

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and December 1, 2017. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and December 1, 2017. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's rejected his request to reduce his rent, and required renovations in a short period of time. *See* Second Am. Cplt., at ¶¶ 173–78 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and December 1, 2017. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Here, Manning alleges that McDonald's excluded him from rent opportunities provided to other franchisees like rent relief. *See* Second Am. Cplt., at ¶ 173 (Dckt. No. 2). That's a claim.

However, Manning alleges other facts that do not state a claim under section 3. He alleges that he was excluded from purchasing restaurants in the open market. Id. at ¶ 172. That allegation can't give rise to a claim. Section 3 is about "the operation of the Restaurant." Buying other stores doesn't fall within that category.

Manning also alleges that McDonald's provided misleading financial information and concealed information from him. *Id.* at ¶ 174. But he does not allege that this kind of information was a right or privilege that was made generally available to all other franchisees.

Finally, Manning alleges that McDonald's pressured him to complete renovations as part of the Bigger Bolder Vision plan at a faster pace than other stores. *Id.* at ¶ 175. That allegation also does not state a claim for breach of section 3. Section 3 does not place any limits on rebuild schedule. The pace of rebuilding required does not deprive a franchisee of a right or privilege made "generally available" to other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Manning did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and December 1, 2017. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and December 1, 2017, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Manning exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that he might have for tortious interference with lenders is time-barred in its entirety.

Any remaining tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**V. Van Jakes (Plaintiff #5)**

Jakes entered McDonald's system on August 19, 1992, and exited McDonald's system on January 4, 2016. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and January 4, 2016. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Here, Jakes alleges that McDonald's enforced its renovation standards more stringently on Jakes than other franchisees. *See* Second Am. Cplt., at ¶ 205 (Dckt. No. 2). But renovation standards are not a right or privilege made "generally available" to other franchisees. Section 3 does not give a franchisee a contractual right to be guaranteed the same renovation standards. Requiring a rebuild to a certain standard does not deprive a franchisee of a right or a privilege.

Jakes also alleges that he was not given the opportunity to sell his old stores, or purchase a new store, because of his race. *See* Second Am. Cplt., at ¶¶ 206–08 (Dckt. No. 2). Section 3 is about "the operation of the Restaurant." Buying *new* stores doesn't fall within that category. So he has not stated a breach of section 3 by alleging that McDonald's prevented him from buying a new store.

Jakes also has not stated a claim based on not being allowed to sell his franchises. Section 15 of the franchise agreement says that franchisees "shall not sell, transfer, or assign this Franchise to any person or persons without McDonald's prior written consent." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1). Franchisees have no generally available right to sell their stores without McDonald's prior consent. In fact, the contract says the opposite. No franchisee had a right to sell their stores to a buyer of their choice without the consent of McDonalds.

Jakes also alleges he was subject to more frequent inspections than other franchises. *See* Second Am. Cplt., at ¶¶ 209–10 (Dckt. No. 2). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege. Getting subjected to more frequent inspections is not a violation of section 3. Jakes alleges that McDonald's showed greater latitude given to another owner-operators in the area, but that's not enough. Section 3 is about benefits and rights enjoyed by "*all* its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1) (emphasis added).

Finally, Jakes alleges that McDonald's prevented him from becoming a vendor while other operators were allowed to become vendors. *See* Second Am. Cplt., at ¶ 211 (Dckt. No. 2). But section 3 is about "the operation of the Restaurant." The option to become a vendor was separate from the operation of the restaurant.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Jakes did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and January 4, 2016. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and January 4, 2016, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Van Jakes exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that he might have for tortious interference with lenders is time-barred in its entirety.

Any remaining tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## VI. Annis Alson-Staley (Plaintiff #6)

Alson-Staley entered McDonald's system on June 1, 1994, and exited McDonald's system on September 28, 2015. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and September 28, 2015. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Here, Alson-Staley alleges that McDonald's unreasonably demanded that she rebuild and renovate her stores. *See* Second Am. Cplt., at ¶ 223 (Dckt. No. 2). Section 3 does not give a franchisee a contractual right to the same rebuild and renovation requirements as all other stores. The renovation requirements are not a generally available right or privilege under Section 3. Plaintiff has failed to state a claim under section 3.

Plaintiff also alludes to McDonald's not allowing her to purchase new stores. *Id.* at ¶ 224. But section 3 is about "the operation of the Restaurant." The option to purchase a *new* store doesn't fall within this category.

Plaintiff also complains that McDonald's charged her higher rent than other franchise owners. But unlike other Plaintiffs, Alson-Staley doesn't argue that she was deprived of access to the specific rent relief program or other financial privileges. Section 3 does not create a contractual right to pay the same rent as every other franchisee (which isn't surprising, given that every piece of real estate is unique). Plaintiff has failed to state a claim.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Alson-Staley did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and September 28, 2015. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and September 28, 2015, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Alson-Staley exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim she might have for tortious interference with lenders is time-barred in its entirety.

Any remaining tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## VII. Harry Staley (Plaintiff #7)

Staley entered McDonald's system on November 22, 1996, and exited McDonald's system on September 28, 2015. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and September 28, 2015. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Here, Staley alleges that McDonald's unreasonably demanded that he rebuild and renovate his stores. *See* Second Am. Cplt., at ¶ 223 (Dckt. No. 2). Section 3 does not give a franchisee a contractual right to the same rebuild and renovation requirements as all other stores. The renovation requirements are not a generally available right or privilege under section 3. Plaintiff has failed to state a claim under section 3.

Plaintiff also alludes to McDonald's not allowing him to purchase new stores. *Id.* at ¶ 224. But section 3 is about "the operation of the Restaurant." The option to purchase a *new* store doesn't fall within this category.

Plaintiff also complains that McDonald's charged him higher rent than other franchise owners. But unlike other Plaintiffs, Staley doesn't argue he was deprived of access to the specific rent relief program or other financial privileges. Section 3 does not create a contractual right that every franchisee be charged the same rent. Plaintiff has failed to state a claim.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Staley did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and September 28, 2015. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and September 28, 2015, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Staley exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that he might have for tortious interference with lenders is time-barred in its entirety.

Any remaining tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## VIII. Robert Bonner (Plaintiff #8)

Bonner entered McDonald's system on September 28, 1990, and exited McDonald's system on June 1, 2013. He brings 10 claims.

Bonner was not a party in the original complaint filed on August 31, 2020. Bonner joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Second Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and June 1, 2013. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Here, Bonner makes several allegations.

Bonner alleges that he was required to invest in a remodel when other franchises weren't. Section 3 does not place any limits on remodel requirements. The amount and type of remodeling required does not deprive that franchisee of a right or privilege made generally available to other franchisees. There is no generally available right not to make certain remodels.

Bonner also alleges that he was not given the opportunity to sell his old stores nor purchase a new store because of his race when others were. *Id.* at ¶¶ 206–08. Section 3 is about "the operation of the Restaurant." Buying *new* stores doesn't fall within that category. So he has not stated a breach of section 3 by alleging that he was prevented from buying a new store.

Bonner also has not stated a claim based on not being allowed to sell his franchises. Section 15 of the franchise agreement says that franchisees "shall not sell, transfer, or assign this Franchise to any person or persons without McDonald's prior written consent." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1). There was no generally available right to sell without McDonald's prior consent. In fact, quite the opposite. Nobody in the McDonald's franchise had a general right to sell without the consent of McDonalds. Plaintiff has failed to state a claim.

Plaintiff does state one claim under section 3. He alleges he was not provided rent relief that McDonald's provided to other franchisees. The allegation is cursory, but it falls within the scope of section 3, and the allegation is enough to put Defendant on notice of the nature of the claim. Plaintiff has stated a claim for breach of section 3 related to McDonald's failure to provide rent relief that was generally available to other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and June 1, 2013.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Bonner alleges that McDonald's did not approve a sale to Plaintiff's preferred buyer. *See* Second Am. Cplt., at ¶¶ 230–32 (Dckt. No. 2). That's not a claim. McDonald's had the express contractual right to approve or disapprove potential buyers, as long as the consent is not "arbitrarily withheld." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1).

The complaint does not contain sufficient facts to give rise to a plausible inference that McDonald's blocked a sale to a prospective buyer and favored a white buyer on the basis of race. The complaint seems to allege that Plaintiff "had to sell the store for less approximately 25% less [sic] than the deal he had lined up." *See* Second Am. Cplt., at ¶ 231 (Dckt. No. 2). But the complaint does not allege that McDonald's withheld consent to the sale. If anything, it alleges the opposite.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and June 1, 2013. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## IX. Larry Brown (Plaintiff #9)

Brown entered McDonald's system on July 15, 2000, and exited McDonald's system on January 6, 2017. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and January 6, 2017, when Brown exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and January 6, 2017. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 245–46 (Dckt. No. 2). Brown alleges that he sold his restaurants at a loss to a white buyer, and that McDonald's had encouraged the buyer to make a "low ball" offer. *Id.* at ¶ 245. That's too conclusory to state a claim. Encouraging a sale at a certain price isn't enough to give rise to an inference of discrimination, even if the price is low and the buyer is white.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and January 6, 2017. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and January 6, 2017. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against the plaintiff for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's encouraged a white owner/operator to give Brown a "low ball" offer for his restaurants. *See* Second Am. Cplt., at ¶¶ 245–46 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and July 6, 2017. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Brown alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶ 238 (Dckt. No. 2). That's a claim.

Plaintiff also alleges that McDonald's breached section 3 when McDonald's provided false information when Plaintiff wanted to buy another store. *Id.* at ¶ 240. That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

Plaintiff also alleges that McDonald's put him on a more rigorous rebuild and/or renovation schedule for his restaurants compared to stores run by white owner-operators. See Second Am. Cplt., at ¶¶ 243–44 (Dckt. No. 2). Plaintiff also alleges that McDonald's subjected him to excessive inspections. *Id.*

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and July 6, 2017.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Brown alleges that McDonald's instructed a potential buyer to "low ball" Brown when making an offer to buy his stores. *See* Second Am. Cplt., at ¶ 245 (Dckt. No. 2). That's not a claim. The complaint does not allege that McDonald's withheld consent to a sale. If anything, it alleges the opposite.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and January 6, 2017. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not

give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and January 6, 2017, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Brown exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that he might have for tortious interference with lenders is time-barred in its entirety.

Any remaining tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## X. Benny Clark (Plaintiff #10)

Clark entered McDonald's system on August 12, 1971, and exited McDonald's system on November 1, 2019. He brings 10 claims.

Clark was not a party in the original complaint filed on August 31, 2020. Clark joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct that predates November 16, 2018. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and November 1, 2019, when Clark exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between November 16, 2016, and November 1, 2019. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 249–52 (Dckt. No. 2). Clark alleges that he did not receive support or financial relief from McDonald's, so he exited the system at a loss. *Id.* at ¶ 252. That's not enough to support an inference of discriminatory intent.

Clark also complains about McDonald's modernization program called Bigger Bolder Vision 2020, which favored franchisees with more stores and franchisees who could afford renovations. *Id.* at ¶¶ 16–17, 101–03, 123.

Manning alleges that the Bigger Bolder program had a disparate impact on black franchisees. *Id.* at ¶ 251. But a claim under section 1981 requires discriminatory intent, and an allegation of disparate impact is not enough. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct that predates November 16, 2016. All post-contract-formation conduct that predates November 16, 2018 is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2018 and November 1, 2019. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between November 16, 2018 and November 1, 2019. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's performed unequal inspections and gave the stores poorer reviews compared to stores run by white owner-operators. *See* Second Am. Cplt., at ¶¶ 249–52 (Dckt. No. 2). The complaint also alleges that they did not receive financial relief. *Id.* That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** is a discrimination claim about leasing property under section 1982. The parties disagree about whether the claim is timely, and whether it relates back to the filing of the original complaint.

Plaintiffs did not raise a discrimination claim about leasing property under section 1982 in the original complaint filed on August 31, 2020, or in the first amended complaint filed on November 16, 2020. Plaintiffs raised a discrimination claim about leasing property under section 1982 for the first time in the second amended complaint on December 16, 2022. Plaintiffs filed that second amended complaint in the *King* case (20-cv-5132), before the case

was severed. The second amended complaint was refiled in the *Manning* case under a new case number (23-cv-210) on January 20, 2023.

A claim under section 1982 has a two-year statute of limitations. So, any claim is time-barred for any conduct before December 16, 2020 (meaning two years before the filing of the second amended complaint on December 16, 2022), unless relation-back applies.

Under Rule 15(c)(1)(B), an amended complaint relates back to the date of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." *See* Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c) "relaxes, but does not obliterate, the statute of limitations." *See Mayle v. Felix*, 545 U.S. 644, 659 (2025).

The central inquiry under Rule 15(c) is whether the original complaint "gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006). "Even 'significant' changes to a complaint or to a class definition can relate back so long as the defendant had fair notice of the substance of the new allegations from the outset." *See Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005).

"A new legal theory may therefore relate back if it is tethered to the same core of operative facts." *See Elliott v. Village of Wayne*, 2026 WL 705746, at *3 (N.D. Ill. 2026). "Even where an amendment 'invoke[s] a legal theory not suggested by the original complaint and relie[s] on facts not originally asserted,' relation back is in order '[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts.'" *See Coleman v. United States*, 79 F.4th 822, 829 (7th Cir. 2023) (quoting *Mayle v. Felix*, 545 U.S. 644, 664 (2005)).

In Count IV, Plaintiffs allege that McDonald's discriminated against them in the leasing of property, by (1) refusing to lease favorable, profitable locations; (2) forcing them to lease unfavorable locations; and (3) denying requests to sell their restaurants and transfer their interest in real property to the buyers of their choosing. *See* Second Am. Cplt., at ¶ 799 (Dckt. No. 2).

In the original complaint, Plaintiffs alleged that McDonald's "forc[ed] Plaintiffs into substandard, low-profit stores in predominantly Black communities with high crime rates." *See* Cplt., at ¶ 8, *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 1). Plaintiffs alleged that McDonald's prevented them from pursuing "opportunities in affluent white communities." *Id.* at ¶ 11. Plaintiffs also alleged that McDonald's "refused to allow Plaintiffs to sell to their preferred Black buyers, and it instead forced Plaintiffs to sell at lower prices to white buyers that McDonald's had hand-picked." *Id.* at ¶ 6.

On this issue, the allegations in the second amended complaint mirror the allegations in the original complaint. From day one, Plaintiffs have alleged that McDonald's discriminated against them by preventing them from acquiring stores in favorable neighborhoods, and by

offering them stores in unfavorable neighborhoods. The original complaint also alleged discrimination when the time came to sell their restaurants.

In the Joint Submission, McDonald's opposes relation back because the original complaint framed the issue in terms of "contract rights," and the second amended complaint frames the issue in terms of "property rights." *See* Joint Submission, at 31 n.4 (Dckt. No. 72).

True, the legal theory may not be the same. Plaintiffs didn't invoke section 1982 in the original complaint, and did not focus on leases as opposed to contracts. But relation back depends on the facts, not the legal theory. *See Coleman v. United States*, 79 F.4th 822, 829 (7th Cir. 2023).

This Court concludes that the discrimination claim about leasing under section 1982 relates back to the filing of the original complaint (actually, to the signing of the tolling agreement on June 8, 2020). The allegations about leasing discrimination arose out of the same "conduct, transaction, or occurrence" set out in the original complaint. *See* Fed. R. Civ. P. 15(c)(1)(B).

Any claim about leasing discrimination is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

Section 1982 protects the equal right to "inherit, purchase, lease, sell, hold, and convey real and personal property." *See* 42 U.S.C. § 1982. "Because sections 1981 and 1982 are derived from the first section of the Civil Rights Act of 1866 and share a common purpose, federal courts construe [s]ection 1981 and 1982 claims in tandem." *See Parvati Corp. v. City of Oak Forest*, 2012 WL 957479, at *7 (N.D. Ill. 2012) (St. Eve, J.); *see also Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996); *Runyon v. McCrary*, 427 U.S. 160, 171 (1976).

To state an intentional-discrimination claim under section 1982, a plaintiff must allege that the defendant intentionally discriminated against him on the basis of race concerning property, and that there was but-for causation connecting the plaintiff's race to the alleged discrimination. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Plaintiff alleges that in 2019, McDonald's informed him that it was "no longer interested in supporting small operators with only a few restaurants." *See* Second Am. Cplt., at ¶ 251 (Dckt. No. 2). Plaintiff alleges that he appealed, and that McDonald's allowed "white owner/operators . . . to continue operations for either a few restaurants or a single restaurant." *Id.* But McDonald's never provided Plaintiff with "financial relief." *Id.* That's not a claim. Plaintiff does not include sufficient facts to give rise to a plausible inference that McDonald's acted with an intent to discriminate on the basis of race.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** is a retaliation claim about leasing property under section 1982. The parties disagree about whether the claim is timely, and whether it relates back to the filing of the original complaint.

Count VI alleges that, "[a]s described in greater detail above, each of the Plaintiffs engaged in a protected activity by complaining to Defendants about their intentional race discrimination." *See* Second Am. Cplt., at ¶ 809 (Dckt. No. 2). That's an overly generous gloss on the content of the 785 paragraphs of factual allegations. But for the moment, this Court will put that issue to the side.

The original complaint and the first amended complaint did not allege retaliation for engaging in protected activity. Two paragraphs included the word "retaliation" in a long list of misconduct, without more. *See* Cplt., at ¶¶ 74, 176, *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 1). Two other paragraphs give a list of 15 examples of discrimination, and include "[r]etaliation against Plaintiffs for rejecting offering to continue operations in crime-ridden neighborhoods with low-volume sales." *Id.* at ¶¶ 15(i), 181(m). Name-dropping isn't enough to put a foot in the door. The same goes for the first amended complaint.

This Court concludes that the new allegations of retaliation in the second amended complaint do not relate back to the filing of the original complaint or the first amended complaint because they do not arise out of the same "conduct, transaction, or occurrence." *See* Fed. R. Civ. P. 15(c)(1)(B).

Any retaliation claim is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022. That said, the statute of limitations is a moot point, because the second amended complaint does not allege retaliation in non-conclusory terms.

For the reasons stated above, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and November 1, 2019. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores. *See* Second Am. Cplt., at ¶ 249 (Dckt. No. 2). That's not a

claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

Plaintiff also alleges that McDonald's subjected him to excessive inspections. *See* Second Am. Cplt., at ¶ 250 (Dckt. No. 2).

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

Plaintiff also alleges that he did not receive financial relief, but stops short of alleging that McDonald's refused to provide financial relief that it provided to other franchisees. *See* Second Am. Cplt., at ¶ 251 (Dckt. No. 2). So the complaint doesn't state a claim.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Clark did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates November 16, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2015, and November 1, 2019. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and November 1, 2019, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and November 1, 2019, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XI. Eleanor Clark (Plaintiff #11)

Clark entered McDonald's system on August 12, 1971, and exited McDonald's system on November 1, 2019. She brings 10 claims.

Clark was not a party in the original complaint filed on August 31, 2020. Clark joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct that predates November 16, 2018. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and November 1, 2019, when she exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between November 16, 2016, and November 1, 2019. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 249–52 (Dckt. No. 2). Clark alleges that she did not receive support or financial relief from McDonald's, so she exited the system at a loss. *Id.* at ¶ 252. That's not enough to support an inference of discriminatory intent.

Clark also complains about McDonald's modernization program called Bigger Bolder Vision 2020, which favored franchisees with more stores and franchisees who could afford renovations. *See* Second Am. Cplt., at ¶¶ 16–17, 101–03, 123 (Dckt. No. 2).

Clark alleges that the Bigger Bolder program had a disparate impact on black franchisees. *Id.* at ¶ 251. But a claim under section 1981 requires discriminatory intent, and an allegation of disparate impact is not enough. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913

(N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct that predates November 16, 2018. All post-contract-formation conduct that predates November 16, 2016 is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and November 1, 2019, when she exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between November 16, 2016, and November 1, 2019. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's performed unequal inspections and gave the stores poorer reviews compared to stores run by white owner-operators. *See* Second Am. Cplt., at ¶¶ 249–52 (Dckt. No. 2). The complaint also alleges that they did not receive financial relief. *Id.* That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

Plaintiff alleges that in 2019, McDonald's informed her that it was "no longer interested in supporting small operators with only a few restaurants." *See* Second Am. Cplt., at ¶ 251 (Dckt. No. 2). Plaintiff alleges that she appealed, and that McDonald's allowed "white owner/operators . . . to continue operations for either a few restaurants or a single restaurant." *Id.* But McDonald's never provided Plaintiff with "financial relief." *Id.* That's not a claim. Plaintiff does not include sufficient facts to give rise to a plausible inference that McDonald's acted with an intent to discriminate on the basis of race.

Count IV is dismissed in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and November 1, 2019. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores. *See* Second Am. Cplt., at ¶ 249 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

Plaintiff also alleges that McDonald's subjected her to excessive inspections. *See* Second Am. Cplt., at ¶ 250 (Dckt. No. 2).

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

Plaintiff also alleges that she did not receive financial relief, but stops short of alleging that McDonald's refused to provide financial relief that it provided to other franchisees. *See* Second Am. Cplt., at ¶ 251 (Dckt. No. 2). So the complaint doesn't state a claim.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Clark did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates November 16, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2015, and November 1, 2019. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and November 1, 2019, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and November 1, 2019, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XII. Glenda Claypool (Plaintiff #12)

Sherman Claypool entered McDonald's system on April 18, 2011, and exited McDonald's system on March 15, 2014. Glenda Claypool brings 10 claims against McDonald's in her capacity as the surviving spouse.

Claypool was not a party in the original complaint filed on August 31, 2020. Claypool joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and March 15, 2014. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶ 258 (Dckt. No. 2). That's a claim.

Plaintiff alleges that McDonald's put him on a more rigorous rebuild and/or renovation schedule for his restaurants compared to stores run by white owner-operators. *See* Second Am. Cplt., at ¶¶ 259–61 (Dckt. No. 2). Plaintiff also alleges that McDonald's subjected him to excessive inspections. *Id.*

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and March 15, 2014.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Claypool alleges that she "was forced to sell his store to a white owner/operator." *See* Second Am. Cplt., at ¶ 261 (Dckt. No. 2). That's not a claim. Section 15 is about withholding consent to a sale. The complaint does not allege that McDonald's withheld consent to a sale. If anything, it alleges the opposite.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XIII. Juneth Daniel (Plaintiff #13)

Daniel entered McDonald's system on April 23, 2008, and exited McDonald's system on August 1, 2018. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and August 1, 2018, when Daniel exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and August 1, 2018. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 278–96 (Dckt. No. 2). In the Joint Submission, Daniel points to paragraphs in the complaint that give examples of situations where McDonald's failed to offer support (such as the lack of support after someone committed a hate crime). But many of those allegations do not involve making, enforcing, or terminating a contract, so they don't fall within the parameters of section 1981.

Daniel alleges that McDonald's stood in the way when she wanted to change regions, and suggested buying a store in a high-crime area of Atlanta (which, it seems Daniel never did). Daniel also alleges that she eventually sold her restaurants to a white buyer recommended by McDonald's, and so at a loss. That's too thin to support an inference of discriminatory intent.

Daniel also complains about McDonald's modernization program called Bigger Bolder Vision 2020, which favored franchisees with more stores and franchisees who could afford renovations. *See* Second Am. Cplt., at ¶¶ 16–17, 101–03, 123 (Dckt. No. 2).

Daniel alleges that the Bigger Bolder program had a disparate impact on black franchisees. *Id.* at ¶¶ 292–94. But a claim under section 1981 requires discriminatory intent, and an allegation of disparate impact is not enough. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and August 1, 2018. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and August 1, 2018. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's did not provide assistance when the store was a victim of a hate crime. The complaint also alleges that McDonald's did not offer an opportunity to bid on a new store, and did not allow Daniel to change regions.[6] *See* Second Am. Cplt., at ¶¶ 278–96 (Dckt. No. 2). The complaint also alleges that they did not receive financial relief. *Id.* That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling

---

[6] The complaint alleges that Daniel expressed an interest in changing regions, but a Vice President of McDonald's (Valerie Williams) prevented it. *See* Second Am. Cplt., at ¶ 281 (Dckt. No. 2). The complaint then alleges retaliation: "Daniel complained to Ombudsman Bill Lowery about Williams's behavior and her belief that Williams was retaliating against her for seeking out other McDonald's managers to attempt to switch regions. In doing so, Daniel was challenging McDonald's practice of keeping Black operators stuck in undesirable franchise locations." *Id.* at ¶ 282. This Court does not read that paragraph to allege that Daniel complained to Lowery that Williams was treating black franchisees worse than white franchisees. That is, it appears that Daniel complained about an inability to change regions, but did not expressly complain about race-based mistreatment. Overall, the complaint alleges that Daniel complained about the inability to change regions, and about the lack of support in response to a hate crime, but did not complain to McDonald's that it was treating black franchisees worse than white franchisees.

agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

In the Joint Submission, Plaintiff points to lots of paragraphs of the complaint. But most of those allegations pre-date June 8, 2018. *See* Joint Submission, at 40 (Dckt. No. 72).

The only allegation from 2018 says that Plaintiff sold her store to a white person (Gerry Murphy), "the only owner/operator McDonald's presented to her as a potential buyer." *See* Cplt., at ¶ 296 (Dckt. No. 2). That's not a claim. McDonald's did not engage in discrimination by presenting a white person as a potential buyer. The complaint also does not include sufficient facts to give rise to a plausible inference of an intent to discriminate on the basis of race.

Count IV is dismissed in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022.

For the reasons stated above, the complaint fails to state a claim. The complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and August 1, 2018. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶ 275 (Dckt. No. 2). That's a claim.

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores. *See* Second Am. Cplt., at ¶¶ 277, 279 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

Plaintiff alleges that McDonald's put her on a more rigorous rebuild and/or renovation schedule for her restaurants compared to stores run by white owner-operators. *See* Second Am. Cplt., at ¶¶ 283–94 (Dckt. No. 2). Plaintiff also alleges that McDonald's subjected her to excessive inspections. *Id.*

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and August 1, 2018.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. In the Joint Submission, Daniel cites a paragraph about attempting to *buy* stores, not sell stores. *See* Second Am. Cplt., at ¶ 289 (Dckt. No. 2); *see* Joint Submission, at 40 (Dckt. No. 72). But section 15 is about the sale of the stores.

The complaint does allege that Daniel sold her stores for virtually nothing to "the only owner/operator McDonald's presented to her as a potential buyer." *See* Second Am. Cplt., at ¶ 296 (Dckt. No. 2). That's not a claim. Section 15 does not require McDonald's to propose buyers, let alone a certain number of buyers. And in any event, Plaintiff doesn't allege that McDonald's refused to consent to a sale to someone else.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and August 1, 2018. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and August 1, 2018, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and August 1, 2018, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XIV. Yves Dominique (Plaintiff #14)

Dominique entered McDonald's system on August 1, 2008, and exited McDonald's system on April 1, 2017. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and April 1, 2017, when Dominique exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and April 1, 2017. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 305–06 (Dckt. No. 2). Dominique alleges that McDonald's did not approve a sale to a black buyer, and directed him to sell to a buyer who was white. *Id.* The mere fact that McDonald's preferred a sale to another buyer, who was white, cannot give rise to an inference of discrimination. The race of the preferred buyer, standing alone, isn't enough.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and April 1, 2017. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and April 1, 2017. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's did not approve a sale to a preferred buyer. *See* Second Am. Cplt., at ¶¶ 297–306 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely.

In the Joint Submission, Dominique claims that the claim is timely for leasing discrimination "after June 8, 2018." *See* Joint Submission, at 42 (Dckt. No. 72). Dominique left the McDonald's system in 2017.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022.

For the reasons stated above, the complaint fails to state a claim. The complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and April 1, 2017. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores. *See* Second Am. Cplt., at ¶ 302 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

Plaintiff alleges that McDonald's breached section 3 by standing in the way when Plaintiff wanted to sell the stores to a certain buyer. *See* Second Am. Cplt., at ¶¶ 305–06 (Dckt. No. 2). That allegation does not state a claim. Section 3 is about "the operation of the Restaurant." See Franchise Agreement, at § 3 (Dckt. No. 2-1). Selling the stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Dominique did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and April 1, 2017. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and April 1, 2017, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Dominique exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that he might have for tortious interference with lenders is time-barred in its entirety.

Any remaining tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**XV. Wise Finley (Plaintiff #15)**

Finley entered McDonald's system on January 25, 1987, and exited McDonald's system on June 1, 2016. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and June 1, 2016. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that he asked McDonald's for a rent reduction, but McDonald's mostly refused. *See* Second Am. Cplt., at ¶ 330 (Dckt. No. 2). That's not a claim. The complaint does not allege that McDonald's provided the same relief to other similarly situated franchisees.

Plaintiff also alleges that McDonald's removed Halal products from his stores. *Id.* at ¶ 329. The complaint does not allege that McDonald's deprived him of a generally available benefit enjoyed by other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and June 1, 2016.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Finely alleges that he "ended up selling the store to an Indian operator." *See* Second Am. Cplt., at ¶ 331 (Dckt. No. 2). That's not a claim. The complaint does not allege that McDonald's withheld consent to a sale.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and June 1, 2016. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and June 1, 2016, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Finley exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that he might have for tortious interference with lenders is time-barred in its entirety.

Any remaining tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XVI. Jacqueline George (Plaintiff #16)

George entered McDonald's system on November 20, 1990, and exited McDonald's system on February 1, 2012. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913

(N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and February 1, 2012. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶ 337 (Dckt. No. 2). That's a claim.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, George did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

## XVII. Anthony George (Plaintiff #17)

George entered McDonald's system on October 22, 1990, and exited McDonald's system on February 1, 2012. He brings 10 claims.

George was not a party in the original complaint filed on August 31, 2020. George joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and February 1, 2012. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶ 337 (Dckt. No. 2). That's a claim.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, George did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

**XVIII. Wesley Hall (Plaintiff #18)**

Hall entered McDonald's system on October 10, 1999, and exited McDonald's system on May 14, 2010. He brings 10 claims.

Hall was not a party in the original complaint filed on August 31, 2020. Hall joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's subjected him to excessive inspections. *See* Second Am. Cplt., at ¶ 354 (Dckt. No. 2).

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Hall did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

**XIX. Al Harris (Plaintiff #19)**

Harris entered McDonald's system on June 29, 1998, and exited McDonald's system on November 16, 2019. He brings 10 claims.

Harris was not a party in the original complaint filed on August 31, 2020. Harris joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and November 16, 2019, when Harris exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between November 16, 2016, and November 16, 2019. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 377–83 (Dckt. No. 2). Harris alleges that he was forced to sell his stores after he received an unfavorable inspection. *Id.* at ¶¶ 381–83. That's not enough to support an inference of discriminatory intent.

Harris also complains about McDonald's modernization program called Bigger Bolder Vision 2020, which favored franchisees with more stores and franchisees who could afford renovations. *See* Second Am. Cplt., at ¶¶ 16–17, 101–03, 123 (Dckt. No. 2).

Harris alleges that the Bigger Bolder program had a disparate impact on black franchisees. *Id.* at ¶ 377. But a claim under section 1981 requires discriminatory intent, and an allegation of disparate impact is not enough. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and November 16, 2019. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between November 16, 2016, and November 16, 2019. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's did not approve a request to get assigned to a new consultant. The complaint also alleges that McDonald's failed them on a graded visit, so Plaintiff decided to sell his stores. *See* Second Am. Cplt., at ¶¶ 377–83 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

Harris alleges that he received a text from McDonald's suggesting that he did not care about his customers, which he viewed as disrespectful. *See* Second Am. Cplt., at ¶¶ 378–79 (Dckt. No. 2). Harris alleges that McDonald's failed them on a graded visit. *Id.* at ¶ 381. Harris also alleges that he wanted to sell only two of his four stores, but couldn't find a buyer for all

four stores. *Id.* at ¶ 382. So Harris sold all four stores, and barely broke even. *Id.* at ¶ 383. That's not a claim. Plaintiff does not allege facts that could give rise to a plausible inference that McDonald's discriminated against him on the basis of race.

Count IV is dismissed in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022.

For the reasons stated above, the complaint fails to state a claim. The complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and November 16, 2019. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶ 371 (Dckt. No. 2). That's a claim.

Plaintiff alleges that McDonald's breached section 3 by standing in the way when Plaintiff wanted to sell the stores to a certain buyer. *See* Second Am. Cplt., at ¶¶ 374–75 (Dckt. No. 2). That allegation does not state a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Selling the stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Harris did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates November 16, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2015, and November 16, 2019. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and November 16, 2019, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and November 16, 2019, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

### XX. Kristen Harris (Plaintiff #20)

Harris entered McDonald's system on June 29, 1998, and exited McDonald's system on November 16, 2019. She brings 10 claims.

Harris was not a party in the original complaint filed on August 31, 2020. Harris joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and November 16, 2019, when Harris exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between November 16, 2016, and November 16, 2019. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 377–83 (Dckt. No. 2). Harris alleges that she was forced to sell her stores after she received an unfavorable inspection. *Id.* at ¶¶ 381–83. That's not enough to support an inference of discriminatory intent.

Harris also complains about McDonald's modernization program called Bigger Bolder Vision 2020, which favored franchisees with more stores and franchisees who could afford renovations. *See* Second Am. Cplt., at ¶¶ 16–17, 101–03, 123 (Dckt. No. 2).

Harris alleges that the Bigger Bolder program had a disparate impact on black franchisees. *Id.* at ¶ 377. But a claim under section 1981 requires discriminatory intent, and an allegation of disparate impact is not enough. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and November 16, 2019. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's did not approve a request to get assigned to a new consultant. The complaint also alleges that McDonald's failed them on a graded visit, so Plaintiff decided to sell her stores. *See* Second Am. Cplt., at ¶¶ 377–83 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

Harris alleges that she received a text from McDonald's suggesting that she did not care about her customers, which she viewed as disrespectful. *See* Second Am. Cplt., at ¶¶ 378–79 (Dckt. No. 2). Harris alleges that McDonald's failed them on a graded visit. *Id.* at ¶ 381. Harris also alleges that she wanted to sell only two of her four stores, but couldn't find a buyer for all four stores. *Id.* at ¶ 382. So Harris sold all four stores, and barely broke even. *Id.* at ¶ 383. That's not a claim. Plaintiff does not allege facts that could give rise to a plausible inference that McDonald's discriminated against him on the basis of race.

Count IV is dismissed in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022.

For the reasons stated above, the complaint fails to state a claim. The complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and November 16, 2019. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶ 371 (Dckt. No. 2). That's a claim.

Plaintiff alleges that McDonald's breached section 3 by standing in the way when Plaintiff wanted to sell the stores to a certain buyer. *See* Second Am. Cplt., at ¶¶ 374–75 (Dckt. No. 2). That allegation does not state a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Selling the stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Harris did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates November 16, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2015, and November 16, 2019. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and November 16, 2019, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and November 16, 2019, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XXI. Lawrence Holland (Plaintiff #21)

Holland entered McDonald's system on December 31, 2004, and exited McDonald's system on October 29, 2013. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and October 29, 2013. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Holland makes an assortment of allegations about his restaurant. *See* Second Am. Cplt., at ¶¶ 393–99 (Dckt. No. 2). None of them allege that McDonald's withheld generally applicable benefits available to other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Holland did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

## XXII. Glenna Hollis (Plaintiff #22)

Hollis entered McDonald's system on March 4, 1998, and exited McDonald's system on June 24, 2013. She brings 10 claims.

Hollis was not a party in the original complaint filed on August 31, 2020. Hollis joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and June 24, 2013. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores. *See* Second Am. Cplt., at ¶ 411 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Hollis did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

**XXIII. Douglas Hollis (Plaintiff #23)**

Hollis entered McDonald's system on March 4, 1998, and exited McDonald's system on June 24, 2013. He brings 10 claims.

Hollis was not a party in the original complaint filed on August 31, 2020. Hollis joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and June 24, 2013. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores. *See* Second Am. Cplt., at ¶ 411 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Hollis did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

**XXIV. Laetitia Johnson (Plaintiff #24)**

Johnson entered McDonald's system on December 31, 1995, and exited McDonald's system on January 26, 2018. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and January 26, 2018, when Johnson exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and January 26, 2018. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 425–26 (Dckt. No. 2). Johnson alleges that she wanted to sell her stores to her son, but McDonald's refused to approve it. Instead, McDonald's pressured her to sell to other potential buyers, who were white.

That allegation is too thin and too conclusory to support an inference of a discriminatory purpose. The mere fact that McDonald's preferred a sale to another buyer, who was white, cannot give rise to an inference of discrimination. The race of the preferred buyer, standing alone, isn't enough.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and January 26, 2018. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and January 26, 2018. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's did not approve a request to sell the stores to Plaintiff's son. *See* Second Am. Cplt., at ¶¶ 425–26 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

Plaintiff alleges that McDonald's refused to allow a sale of her stores to her son, so Plaintiff "was forced to sell her stores to a white buyer." *See* Second Am. Cplt., at ¶¶ 425–26 (Dckt. No. 2). That's not a claim. The complaint does not include sufficient facts to give rise to a plausible inference that McDonald's rejected the sale to her son on the basis of race. The complaint also does not allege that McDonald's itself forced the sale to a white buyer, let alone did so on the basis of race. Overall, the complaint does not contain sufficient facts to give rise to a plausible inference of discrimination or discriminatory intent.

Count IV is dismissed in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022.

For the reasons stated above, the complaint fails to state a claim. The complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and January 26, 2018. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 by standing in the way when Plaintiff wanted to sell the stores to a certain buyer. *See* Second Am. Cplt., at ¶¶ 425–26 (Dckt. No. 2). That allegation does not state a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Selling the stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and January 26, 2018.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Johnson alleges that McDonald's did not approve a sale to Plaintiff's preferred buyer. *See* Second Am. Cplt., at ¶¶ 425–26 (Dckt. No. 2). That's not a claim. McDonald's had the express contractual right to approve or disapprove potential buyers, as long as the consent is not "arbitrarily withheld." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1).

The complaint does not contain sufficient facts to give rise to a plausible inference that McDonald's blocked a sale to a prospective buyer and favored a white buyer on the basis of race. The complaint alleges that McDonald's did not approve a sale to her son, so Johnson was "forced to sell her stores to a white buyer." *See* Second Am. Cplt., at ¶ 426 (Dckt. No. 2).

That's too conclusory to support a claim. The complaint does not allege that McDonald's forced Johnson to do anything, let alone pressured Johnson to sell to a white buyer, let alone did so on the account of race. Pointing to the race of the buyer preferred by McDonald's won't cut it, either. The complaint must do more than allege that McDonald's encouraged a sale to buyers who were white.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and January 26, 2018. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and January 26, 2018, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and January 26, 2018, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Any remaining tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**XXV. Harold Lewis (Plaintiff #25)**

Lewis entered McDonald's system on February 9, 1987, and exited McDonald's system on May 29, 2015. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and May 29, 2015. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores and expanding his business. *See* Second Am. Cplt., at ¶¶ 432–36 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

Plaintiff alleges that McDonald's breached section 3 by standing in the way when Plaintiff wanted to sell the stores to a certain buyer. *See* Second Am. Cplt., at ¶¶ 437–40 (Dckt. No. 2). That allegation does not state a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Selling the stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Lewis did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

**XXVI. Jeremy Lewis (Plaintiff #26)**

Lewis entered McDonald's system on June 24, 2008, and exited McDonald's system on May 29, 2015. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and May 29, 2015. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores and expanding his business. *See* Second Am. Cplt., at ¶¶ 432–36 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

Plaintiff alleges that McDonald's breached section 3 by standing in the way when Plaintiff wanted to sell the stores to a certain buyer. *See* Second Am. Cplt., at ¶¶ 437–40 (Dckt. No. 2). That allegation does not state a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Selling the stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Lewis did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

**XXVII. Joseph Mbanefo (Plaintiff #27)**

Mbanefo entered McDonald's system on March 13, 1998, and exited McDonald's system on December 31, 2012. He brings 10 claims.

Mbanefo was not a party in the original complaint filed on August 31, 2020. Mbanefo joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and December 31, 2012. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores. *See* Second Am. Cplt., at ¶¶ 456–57 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

Plaintiff alleges that McDonald's breached section 3 by standing in the way when Plaintiff wanted to sell the stores to a certain buyer. *See* Second Am. Cplt., at ¶¶ 464–65 (Dckt. No. 2). That allegation does not state a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Selling the stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and December 31, 2012.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Mbanefo alleges that McDonald's did not approve a sale to Plaintiff's preferred buyer, "without providing a reason." *See* Second Am. Cplt., at ¶ 464 (Dckt. No. 2). That's not a claim. McDonald's had the express contractual right to approve or disapprove potential buyers, as long as the consent is not "arbitrarily withheld." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1). The contract did not require McDonald's to articulate a reason for its decision.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

## XXVIII. Lois McGuire (Plaintiff #28)

McGuire entered McDonald's system on June 1, 2000, and exited McDonald's system on June 20, 2016. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and June 20, 2016. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

McGuire alleges that McDonald's did not provide support after the restaurant suffered a fire. *See* Second Am. Cplt., at ¶¶ 479–83 (Dckt. No. 2). That's not a claim. Plaintiff does not allege that McDonald's withheld a generally applicable benefit available to all other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, McGuire did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and June 20, 2016. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely for any tortious interference that took place before December 16, 2017.

Count IX (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and June 20, 2016, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. McGuire exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that she might have for tortious interference with lenders is time-barred in its entirety.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**XXIX. Mitchell McGuire (Plaintiff #29)**

McGuire entered McDonald's system on June 1, 2000, and exited McDonald's system on June 20, 2016. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and June 20, 2016. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

McGuire alleges that McDonald's did not provide support after the restaurant suffered a fire. *See* Second Am. Cplt., at ¶¶ 479–83 (Dckt. No. 2). That's not a claim. Plaintiff does not allege that McDonald's withheld a generally applicable benefit available to all other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, McGuire did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and June 20, 2016. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and June 20, 2016, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. McGuire exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that he might have for tortious interference with lenders is time-barred in its entirety.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XXX. Scott Miller (Plaintiff #30)

Miller entered McDonald's system on June 30, 1997, and exited McDonald's system on March 13, 2019. He brings 10 claims.

Miller was not a party in the original complaint filed on August 31, 2020. Miller joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and March 13, 2019, when Miller exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between November 16, 2016, and March 13, 2019. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 490–504 (Dckt. No. 2). Miller alleges that McDonald's refused to renew their leases, and prevented them from buying other stores. *Id.* at ¶ 492. Miller alleges that McDonald's blocked a sale to a white buyer, and later sold the stores to a different white buyer preferred by McDonald's. *Id.* at ¶¶ 501–02. That allegation does not give rise to an inference of discriminatory intent.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and March 13, 2019. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between November 16, 2016, and March 13, 2019. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's did not approve a request to purchase four stores from a family member. The complaint also alleges that McDonald's refused to renew Plaintiff's leases. *See* Second Am. Cplt., at ¶¶ 490–504 (Dckt. No. 2). The complaint also alleges that McDonald's denied a rewrite request. That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

Plaintiff alleges that he planned to sell to a certain buyer (Linders), but that buyer later withdrew. "McDonald's told him he was not able to purchase the stores because his sales were below the TV market sales in the region." *See* Second Am. Cplt., at ¶ 501 (Dckt. No. 2). So Plaintiff sold to a white owner-operator (Davis) preferred by McDonald's. *Id.* at ¶ 502. And 33 months later, Davis sold the stores to Linders. *Id.* at ¶ 504. That's not a claim. The complaint does not contain sufficient facts to give rise to a plausible inference that McDonald's acted with a discriminatory intent.

Count IV is dismissed in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022.

For the reasons stated above, the complaint fails to state a claim. The complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and March 13, 2019. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores. *See* Second Am. Cplt., at ¶¶ 490–97 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

Plaintiff complains about other aspects of the relationship with McDonald's, but does not allege that McDonald's withheld a generally available benefit that it provided to all other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and March 13, 2019.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Miller alleges that McDonald's did not approve a sale to Plaintiff's preferred buyer. *See* Second Am. Cplt., at ¶¶ 487–500 (Dckt. No. 2). That's not a claim. McDonald's had the express contractual right to approve or disapprove potential buyers, as long as the consent is not "arbitrarily withheld." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1).

The complaint alleges that McDonald's did not approve a proposed sale because the prospective buyer operated another restaurant with below-market sales. *See* Second Am. Cplt., at ¶ 501 (Dckt. No. 2). The complaint alleges that Miller wanted to sell to Linders, but "Linders withdrew from the deal," so Miller had to sell to Davis (who is white) instead. *Id.* at ¶¶ 501–02. The complaint goes on to allege that, 33 months later, Davis sold the stores to Linders at a profit. *Id.* That allegation is not enough to give rise to a plausible inference of race discrimination.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates November 16, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2015, and March 13, 2019. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and March 13, 2019, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and March 13, 2019, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**XXXI. Dwight Miller (Plaintiff #31)**

Miller entered McDonald's system on June 30, 1997, and exited McDonald's system on March 13, 2019. He brings 10 claims.

Miller was not a party in the original complaint filed on August 31, 2020. Miller joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and March 13, 2019, when Miller exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between November 16, 2016, and March 13, 2019. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 490–504 (Dckt. No. 2). Miller alleges that McDonald's refused to renew their leases, and prevented them from buying other stores. *Id.* at ¶ 492. Miller alleges that McDonald's blocked a sale to a white buyer, and later sold the stores to a different white buyer preferred by McDonald's. *Id.* at ¶¶ 501–02. That allegation does not give rise to an inference of discriminatory intent.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and March 13, 2019. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between November 16, 2016, and March 13, 2019. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's did not approve a request to purchase four stores from a family member. The complaint also alleges that McDonald's refused to renew Plaintiff's leases. *See* Second Am. Cplt., at ¶¶ 490–504 (Dckt. No. 2). The complaint also alleges that McDonald's denied a rewrite request. That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is timely as applied to conduct on or after June 8, 2018, meaning two years before the signing of the tolling agreement on June 8, 2020. The claim is untimely to the extent that it involves conduct before June 8, 2018.

Plaintiff alleges that he planned to sell to a certain buyer (Linders), but that buyer later withdrew. "McDonald's told him he was not able to purchase the stores because his sales were below the TV market sales in the region." *See* Second Am. Cplt., at ¶ 501 (Dckt. No. 2). So Plaintiff sold to a white owner-operator (Davis) preferred by McDonald's. *Id.* at ¶ 502. And 33 months later, Davis sold the stores to Linders. *Id.* at ¶ 504. That's not a claim. The complaint does not contain sufficient facts to give rise to a plausible inference that McDonald's acted with a discriminatory intent.

Count IV is dismissed in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022.

For the reasons stated above, the complaint fails to state a claim. The complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and March 13, 2019. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 when McDonald's stood in the way of Plaintiff buying other stores. *See* Second Am. Cplt., at ¶¶ 490–97 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Buying other stores doesn't fall within that category.

Plaintiff complains about other aspects of the relationship with McDonald's, but does not allege that McDonald's withheld a generally available benefit that it provided to all other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and March 13, 2019.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Miller alleges that McDonald's did not approve a sale to Plaintiff's preferred buyer. *See* Second Am. Cplt., at ¶¶ 487–500 (Dckt. No. 2). That's not a claim. McDonald's had the express contractual right to approve or disapprove potential buyers, as long as the consent is not "arbitrarily withheld." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1).

The complaint alleges that McDonald's did not approve a proposed sale because the prospective buyer operated another restaurant with below-market sales. *See* Second Am. Cplt., at ¶ 501 (Dckt. No. 2). The complaint alleges that Miller wanted to sell to Linders, but "Linders withdrew from the deal," so Miller had to sell to Davis (who is white) instead. *Id.* at ¶¶ 501–02. The complaint goes on to allege that, 33 months later, Davis sold the stores to Linders at a profit. *Id.* That allegation is not enough to give rise to a plausible inference of race discrimination.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates November 16, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2015, and March 13, 2019. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and March 13, 2019, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and March 13, 2019, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XXXII. Dawn Mussenden (Plaintiff #32)

Mussenden entered McDonald's system on August 18, 1991, and exited McDonald's system on January 31, 2017. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and January 31, 2017, when Mussenden exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and January 31, 2017. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 524–27 (Dckt. No. 2). Mussenden alleges that she sold her stores after McDonald's inspected a restaurant and discovered expired meat. She also alleges that she paid higher rent than another owner-operator, who was white. That allegation is not enough to give rise to a plausible inference of discriminatory intent.

Mussenden also complains about McDonald's modernization program called Bigger Bolder Vision 2020, which favored franchisees with more stores and franchisees who could afford renovations. *See* Second Am. Cplt., at ¶¶ 16–17, 101–03, 123 (Dckt. No. 2).

Mussenden alleges that the Bigger Bolder program had a disparate impact on black franchisees. *Id.* at ¶ 524. But a claim under section 1981 requires discriminatory intent, and an

allegation of disparate impact is not enough. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and January 31, 2017. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and January 31, 2017. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's made constant, unannounced inspections, and paid a high price for rent compared to a white owner-operator. The complaint also alleges that McDonald's refused to renew Plaintiff's leases. *See* Second Am. Cplt., at ¶¶ 524–27 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and January 31, 2017. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff also alleges that McDonald's subjected her to excessive inspections. *See* Second Am. Cplt., at ¶ 525 (Dckt. No. 2).

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Mussenden did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and January 31, 2017. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and January 31, 2017, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Mussenden exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that she might have for tortious interference with lenders is time-barred in its entirety.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**XXXIII. William Rasul (Plaintiff #33)**

Rasul entered McDonald's system on December 10, 1999, and exited McDonald's system on July 24, 2010. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and July 24, 2010. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff also alleges that McDonald's subjected him to excessive inspections. *See* Second Am. Cplt., at ¶ 533 (Dckt. No. 2).

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace

of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Rasul did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

## XXXIV. Dwayne Richard Johnson (Plaintiff #34)

Johnson entered McDonald's system on March 8, 1993, and exited McDonald's system on March 7, 2012. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and March 7, 2012. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff complains that McDonald's denied him a rewrite. *See* Second Am. Cplt., at ¶ 547 (Dckt. No. 2). But Plaintiff does not allege that McDonald's withheld a generally available benefit that it provided to all other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Johnson did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

## XXXV. Jeffery Rogers (Plaintiff #35)

Rogers entered McDonald's system on August 1, 2005, and exited McDonald's system on May 1, 2011. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and May 1, 2011. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff also alleges that McDonald's subjected him to excessive grading visits. *See* Second Am. Cplt., at ¶¶ 576–77 (Dckt. No. 2).

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

Plaintiff alleges that McDonald's breached section 3 by standing in the way when Plaintiff wanted to sell the stores to a certain buyer. *See* Second Am. Cplt., at ¶ 578 (Dckt. No. 2). That allegation does not state a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Selling the stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and May 1, 2011.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Rogers alleges that McDonald's did not approve a sale to his preferred buyer, and sent the name of a different potential buyer instead. *See* Second Am. Cplt., at ¶ 578 (Dckt. No. 2). That's not a claim. McDonald's had the express contractual right to approve or disapprove potential buyers, as long as the consent is not "arbitrarily withheld." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1).

The complaint does not contain sufficient facts to give rise to a plausible inference that McDonald's blocked a sale to a prospective buyer and favored a white buyer on the basis of race. A complaint cannot rest on conclusory allegations. Pointing to the race of the buyers preferred by McDonald's won't cut it, either. The complaint must do more than allege that McDonald's encouraged a sale to buyers who were white.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

**XXXVI. Carrie Salone (Plaintiff #36)**

Salone entered McDonald's system on February 19, 2003, and exited McDonald's system on August 26, 2016. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and August 26, 2016, when Salone exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and August 26, 2016. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 601–04 (Dckt. No. 2). Salone alleges that McDonald's pressured her to sell her restaurant, and she later did so at a loss. She also alleges that the buyer was white, and that McDonald's gave him a financial incentive if he purchased and remodeled the store. That allegation cannot give rise to a plausible inference of discriminatory intent.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and August 26, 2016. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and August 26, 2016. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's pressured her to sell her store to a white owner-operator, who received a financial incentive from McDonald's to remodel. *See* Second Am. Cplt., at ¶¶ 601–04 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and August 26, 2016. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff also alleges that McDonald's subjected her to excessive grading visits. *See* Second Am. Cplt., at ¶ 598 (Dckt. No. 2).

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the

same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

Plaintiff also alleges that McDonald's breached section 3 by pressuring Plaintiff to sell the store to a particular buyer. *See* Second Am. Cplt., at ¶ 603 (Dckt. No. 2). That's not a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and August 26, 2016.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Salone alleges that she received an offer for her store from a buyer who received financial incentives from McDonald's. *See* Second Am. Cplt., at ¶¶ 602–03 (Dckt. No. 2). That's not a claim. Section 15 is about consenting to a sale, and Salone does not allege that McDonald's refused to consent to a proposed sale. Plus, section 15 does not prevent McDonald's from offering financial incentives to potential franchisees.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and August 26, 2016. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and August 26, 2016, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Salone exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that she might have for tortious interference with lenders is time-barred in its entirety.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**XXXVII. Jeremiah Simmons (Plaintiff #37)**

Simmons entered McDonald's system on February 1, 1998, and exited McDonald's system on June 21, 2010. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and June 21, 2010. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 by standing in the way when Plaintiff wanted to sell the stores to a certain buyer. *See* Second Am. Cplt., at ¶¶ 615–16 (Dckt. No. 2). That allegation does not state a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Selling the stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and June 21, 2010.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Simmons alleges that he received an offer for his store from a potential buyer, but after meeting with McDonald's, that prospective buyer withdrew the offer. *See* Second Am. Cplt., at ¶¶ 615–16 (Dckt. No. 2). That's not a claim. The complaint does not allege that McDonald's rejected a proposed sale, let alone withheld its consent arbitrarily.

The complaint also alleges that Simmons eventually sold the store to a white buyer, who was hand-picked by McDonald's. *Id.* at ¶ 616. That's not a claim. Section 15 is about withholding consent to a proposed sale for arbitrary reasons. The complaint does not allege that McDonald's blocked the sale to the white buyer. If anything, it does the opposite.

The complaint does not contain sufficient facts to give rise to a plausible inference that McDonald's blocked a sale to a prospective buyer and favored a white buyer on the basis of race. A complaint cannot rest on conclusory allegations. Pointing to the race of the buyers preferred by McDonald's won't cut it, either. The complaint must do more than allege that McDonald's encouraged a sale to buyers who were white.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XXXVIII. Floyd Sims (Plaintiff #38)

Sims entered McDonald's system on January 8, 2000, and exited McDonald's system on May 18, 2018. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and May 18, 2018 when Sims exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and May 18, 2018. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 640–56 (Dckt. No. 2). Sims

alleges that McDonald's refused to renew one of his leases, and pressured him to sell his stores. He also alleges that, after a series of rigorous inspections, he sold his stores to a white owner-operator. That allegation cannot give rise to an inference of discriminatory intent.

That allegation is too thin and too conclusory to support an inference of a discriminatory purpose. The race of the preferred buyer, standing alone, isn't enough. The complaint does not allege but-for causation, either.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and May 18, 2018. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and May 18, 2018. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's did not give him notice of a road construction project, and did not renew a lease on one of his stores. *See* Second Am. Cplt., at ¶¶ 640–56 (Dckt. No. 2). The complaint also alleges that McDonald's subjected him to excessive and unnecessary inspections, and increased his rent. That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022.

For the reasons stated above, the complaint fails to state a claim. The complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and May 18, 2018. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's put him on a more rigorous rebuild and/or renovation schedule for his restaurants compared to stores run by white owner-operators. *See* Second Am. Cplt., at ¶¶ 651–52 (Dckt. No. 2). Plaintiff also alleges that McDonald's subjected him to excessive inspections. *Id.*

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

Plaintiff complains about other aspects of the relationship with McDonald's, but does not allege that McDonald's withheld a generally available benefit that it provided to all other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Sims did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and May 18, 2018. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and May 18, 2018, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and May 18, 2018, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**XXXIX. Allen Stafford (Plaintiff #39)**

Stafford entered McDonald's system on October 9, 1992, and exited McDonald's system on July 22, 2019. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and July 22, 2019, when Stafford exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and July 22, 2019. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 665–66, 672–76 (Dckt. No. 2). Stafford alleges that McDonald's denied his requests for rent relief, and told him to do

renovations that he could not afford. Stafford also alleges that he sold his stores. That allegation falls short of giving rise to a plausible inference of discrimination.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016 is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and July 22, 2019. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and July 22, 2019. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's subjected his stores to excessive inspections. *See* Second Am. Cplt., at ¶¶ 665–66, 672–76 (Dckt. No. 2). The complaint also alleges that McDonald's refused requests for rent relief, and placed one of his stores in an improvement process for underperforming restaurants. That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022.

For the reasons stated above, the complaint fails to state a claim. The complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and July 22, 2019. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's put him on a more rigorous rebuild and/or renovation schedule for his restaurants compared to stores run by white owner-operators. *See* Second Am. Cplt., at ¶¶ 664–66, 672–74 (Dckt. No. 2). Plaintiff also alleges that McDonald's subjected him to excessive inspections. *Id.*

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Stafford did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and July 22, 2019. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and July 22, 2019, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and July 22, 2019, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**XXXX. Serge Tancrede (Plaintiff #40)**

Tancrede entered McDonald's system on January 13, 2004, and exited McDonald's system on October 31, 2011. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and October 31, 2011. The question is

whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶¶ 694–95 (Dckt. No. 2). That's a claim.

Plaintiff alleges that McDonald's put him on a more rigorous rebuild and/or renovation schedule for his restaurants compared to stores run by white owner-operators. *See* Second Am. Cplt., at ¶¶ 699–700 (Dckt. No. 2). Plaintiff also alleges that McDonald's subjected him to excessive inspections. *Id.*

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Tancrede did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XXXXI. Karen Tancrede (Plaintiff #41)

Tancrede entered McDonald's system on January 13, 2004, and exited McDonald's system on October 31, 2011. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and October 31, 2011. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶¶ 694–95 (Dckt. No. 2). That's a claim.

Plaintiff alleges that McDonald's put her on a more rigorous rebuild and/or renovation schedule for her restaurants compared to stores run by white owner-operators. *See* Second Am. Cplt., at ¶¶ 699–700 (Dckt. No. 2). Plaintiff also alleges that McDonald's subjected her to excessive inspections. *Id.*

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual

right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Tancrede did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XXXXII. Gordon Thornton (Plaintiff #42)

Thornton entered McDonald's system on September 30, 1993, and exited McDonald's system on April 17, 2012. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and April 17, 2012. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶ 707 (Dckt. No. 2). That's a claim.

Plaintiff alleges that McDonald's put him on a more rigorous rebuild and/or renovation schedule for his restaurants compared to stores run by white owner-operators. *See* Second Am. Cplt., at ¶ 708 (Dckt. No. 2).

That's not a claim. Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Thornton did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XXXXIII. Ronnie Thornton (Plaintiff #43)

Thornton entered McDonald's system on September 11, 1998, and exited McDonald's system on August 1, 2017. She brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016 is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and August 1, 2017, when Thornton exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between June 8, 2016, and August 1, 2017. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶ 717 (Dckt. No. 2). Thornton complains about McDonald's modernization program called Bigger Bolder Vision 2020, which favored franchisees with more stores and franchisees who could afford renovations. *See* Second Am. Cplt., at ¶¶ 16–17, 101–03, 123 (Dckt. No. 2).

Thornton alleges that the Bigger Bolder program had a disparate impact on black franchisees. *Id.* at ¶ 717. But a claim under section 1981 requires discriminatory intent, and an allegation of disparate impact is not enough. *See, e.g.*, *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates June 8, 2016 is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2016, and August 1, 2017. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between June 8, 2016, and August 1, 2017. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's imposed stringent requirements for reinvesting in new products and equipment. *See* Second Am. Cplt., at ¶ 717 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and December 1, 2017. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶ 716 (Dckt. No. 2). That's a claim.

Plaintiff alleges that McDonald's put him on a more rigorous rebuild and/or renovation schedule for his restaurants compared to stores run by white owner-operators. *Id.* at ¶ 717.

That's not a claim. Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Thornton did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates June 8, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between June 8, 2015, and August 1, 2017. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and August 1, 2017, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Thornton exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that he might have for tortious interference with lenders is time-barred in its entirety.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**XXXXIV. Errol Thybulle (Plaintiff #44)**

Thybulle entered McDonald's system on April 11, 1990, and exited McDonald's system on July 1, 2011. He brings 10 claims.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before June 8, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between June 8, 2010, and July 1, 2011. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's subjected him to excessive inspections. *See* Second Am. Cplt., at ¶¶ 723–24 (Dckt. No. 2).

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Thybulle did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XXXXV. William (Pete) Washington (Plaintiff #45)

Washington entered McDonald's system on September 1, 2005, and exited McDonald's system on May 1, 2016. He brings 10 claims.

Washington was not a party in the original complaint filed on August 31, 2020. Washington joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913

(N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and May 1, 2016. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's subjected him to excessive inspections. *See* Second Am. Cplt., at ¶ 731 (Dckt. No. 2).

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

Plaintiff alleges that McDonald's breached section 3 of the agreement by refusing to provide financial relief that it provided to other owner-operators. *See* Second Am. Cplt., at ¶ 732 (Dckt. No. 2). That's a claim.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Washington did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates November 16, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2015, and May 1, 2016. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and May 1, 2016, to the extent that it alleges interference with prospective buyers.

Count IX is untimely to the extent that it alleges interference with potential lenders. Washington exited the system before December 16, 2017, which is five years before the filing of the second amended complaint. So, any claim that he might have for tortious interference with lenders is time-barred in its entirety.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## XXXXVI. Lance Williams (Plaintiff #46)

Williams entered McDonald's system on April 1, 1987, and exited McDonald's system on April 1, 2013. He brings 10 claims.

Williams was not a party in the original complaint filed on August 31, 2020. Williams joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913

(N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and April 1, 2013. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's subjected him to excessive inspections. *See* Second Am. Cplt., at ¶¶ 739–40, 742 (Dckt. No. 2).

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

Unlike some other Plaintiffs, Williams did not bring a breach-of-contract claim under section 15.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

### XXXXVII. Norman Williams (Plaintiff #47)

Williams entered McDonald's system on August 19, 1992, and exited McDonald's system on December 1, 2018. He brings 10 claims.

Williams was not a party in the original complaint filed on August 31, 2020. Williams joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and December 1, 2018, when December exited the system. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a section 1981 claim about discrimination involving contracts between November 16, 2016, and December 1, 2018. Most of the allegations in the complaint predate that period.

The complaint fails to allege facts that give rise to a plausible inference that McDonald's acted with a discriminatory intent. *See* Second Am. Cplt., at ¶¶ 761–62 (Dckt. No. 2). Williams alleges that he received offers from potential buyers to purchase his store. But McDonald's pressured him to sell to "another buyer." *Id.* at ¶ 761. That's not enough to give rise to an inference of a discriminatory intent.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely for all pre-contract-formation conduct. All post-contract-formation conduct that predates November 16, 2016, is dismissed as untimely.

The claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2016, and December 1, 2018. The question is whether the complaint includes allegations that state a claim.

This Court concludes that the amended complaint fails to state a retaliation claim for the post-contract-formation conduct between November 16, 2016, and December 1, 2018. Section 1981 does not apply to any and all acts of retaliation, without more. To bring a retaliation claim under section 1981, a plaintiff must allege that the defendant retaliated against them for engaging in a "statutorily protected activity." *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017).

Here, the complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity. Instead, the complaint alleges that McDonald's did not approved a proposed sale to a preferred buyer, and pressured Plaintiff to sell to someone else. *See* Second Am. Cplt., at ¶¶ 761–62 (Dckt. No. 2). That's not retaliation for engaging in a protected activity.

Count III is dismissed in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is time-barred to the extent that it rests on conduct that predates December 16, 2020, meaning two years before the filing of the second amended complaint on December 16, 2022.

For the reasons stated above, the complaint fails to state a claim. The complaint does not allege that McDonald's retaliated against Plaintiff for complaining about race discrimination or engaging in any other protected activity.

Count VI is dismissed in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and December 1, 2018. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's breached section 3 by standing in the way when Plaintiff wanted to sell the stores to a certain buyer. *See* Second Am. Cplt., at ¶ 761 (Dckt. No. 2). That allegation does not state a claim. Section 3 is about "the operation of the Restaurant." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1). Selling the stores doesn't fall within that category.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and December 1, 2018.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Williams alleges that he received an offer from a potential buyer for his store, but McDonald's pressured him to sell to another buyer instead. Williams alleges that McDonald's did not approve the sale to his preferred buyer. *See* Second Am. Cplt., at ¶¶ 761–62 (Dckt. No. 2). That's not a claim. McDonald's had the express contractual right to approve or disapprove potential buyers, as long as the consent is not "arbitrarily withheld." *See* Franchise Agreement, at § 15(d) (Dckt. No. 2-1). The complaint does not allege any facts supporting the notion that McDonald's withheld its consent arbitrarily.

The complaint does not contain sufficient facts to give rise to a plausible inference that McDonald's blocked a sale to a prospective buyer and favored a white buyer on the basis of race. A complaint cannot rest on conclusory allegations. Pointing to the race of the buyers preferred by McDonald's won't cut it, either. The complaint must do more than allege that McDonald's encouraged a sale to buyers who were white.

**Count VIII** (fraudulent concealment) is dismissed as untimely for any conduct that predates November 16, 2015.

The fraudulent concealment claim is timely to the extent that it involves post-contract-formation conduct between November 16, 2015, and December 1, 2018. The question is whether the complaint includes allegations that state a claim for fraudulent concealment.

The complaint fails to state a claim, for the reasons stated above. Under Illinois law, a franchisor-franchisee relationship does not create a fiduciary relationship and, therefore, does not give rise to a duty to disclose. *See Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. 2008).

**Count IX** (tortious interference with prospective economic advantage) is timely for conduct occurring between June 8, 2015, and December 1, 2018, to the extent that it alleges interference with prospective buyers.

Count IX is timely for conduct occurring between December 16, 2017, and December 1, 2018, to the extent that it alleges interference with potential lenders. For the reasons explained above, these allegations do not relate back, so the five-year statute of limitations tracks the filing of the second amended complaint.

Nonetheless, the tortious interference with prospective economic advantage claim is dismissed for failure to state a claim, for the reasons discussed above.

**Count X** (unjust enrichment) is dismissed as untimely for any conduct that took place before December 16, 2017, meaning five years before the filing of the second amended complaint on December 16, 2022.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

**XXXXVIII. Jacqueline Wynn (Plaintiff #48)**

Wynn entered McDonald's system on March 4, 1988, and exited McDonald's system on December 16, 2011. She brings 10 claims.

Wynn was not a party in the original complaint filed on August 31, 2020. Wynn joined the case as a plaintiff in the amended complaint on November 16, 2020. *See* Am. Cplt., *King v. McDonald's*, 20-cv-5132 (N.D. Ill.) (Dckt. No. 30). So November 16, 2020, is a key date for the statute of limitations.

**Count I** (discrimination claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count II** (pattern-and-practice claim about contracts under section 1981) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43); *see also Koehler v. Infosys Tech. Ltd., Inc.*, 181 F.4th 769, 782 (7th Cir. 2026).

**Count III** (retaliation claim about contracts under section 1981) is dismissed as untimely in its entirety.

**Count IV** (discrimination claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count V** (pattern-and-practice claim about leasing property under section 1982) is dismissed for the reasons stated in *McPherson*. *See* 3/27/26 Order, *McPherson v. McDonald's*, 23-cv-2913 (N.D. Ill.) (Dckt. No. 43).

**Count VI** (retaliation claim about leasing property under section 1982) is dismissed as untimely in its entirety.

**Count VII** (breach of contract) is dismissed as untimely for any breaches that took place before November 16, 2010.

The breach-of-contract claim under section 3 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and December 16, 2011. The question is whether the complaint includes allegations that state a claim for breach of section 3 of the contract.

Section 3 is about the right to receive all "services, facilities, rights, and privileges" relating to the "operation of the Restaurant" that are "generally available" to "all its franchisees operating McDonald's restaurants." *See* Franchise Agreement, at § 3 (Dckt. No. 2-1).

Plaintiff alleges that McDonald's put her on a more rigorous rebuild and/or renovation schedule for her restaurants compared to stores run by white owner-operators. *See* Second Am. Cplt., at ¶ 774 (Dckt. No. 2). Plaintiff also alleges that McDonald's subjected her to excessive inspections. *Id.*

Section 3 requires McDonald's to make benefits available to a franchisee if those benefits are generally available to other franchisees. But section 3 does not place any limits on the pace of the rebuild schedule, and does not limit the number of times that McDonald's can inspect a restaurant.

McDonald's had an express contractual right to inspect the stores of its franchisees. *See* Franchise Agreement, at § 12 (Dckt. No. 2-1). Section 3 does not give a franchisee a contractual right or a privilege to be free from a greater number of inspections compared to other franchisees. That is, McDonald's did not have a contractual duty to inspect every franchisee the same number of times (and no more). Inspecting a franchisee more than other franchisees does not deprive that franchisee of a right or a privilege.

Plaintiff complains about other aspects of the relationship with McDonald's, but does not allege that McDonald's withheld a generally available benefit that it provided to all other franchisees.

The breach-of-contract claim is dismissed to the extent that it alleges a breach of section 12 of the franchise agreement (about the right to inspect).

The breach-of-contract claim under section 15 is timely to the extent that it involves post-contract-formation conduct between November 16, 2010, and December 16, 2011.

The breach-of-contract claim under section 15 is dismissed for failure to state a claim. Wynn alleges that McDonald's "hand-selected a purchaser" of Wynn's stores. *See* Second Am. Cplt., at ¶¶ 778–79 (Dckt. No. 2). That's not a claim. Section 15 is about withholding consent to a proposed sale for arbitrary reasons. Section 15 does not prevent McDonald's from having preferences or making suggestions about potential buyers. The complaint does not allege that McDonald's did not give its consent to a proposed sale. If anything, it alleges the opposite.

**Count VIII** (fraudulent concealment) is dismissed as untimely in its entirety.

**Count IX** (tortious interference with prospective economic advantage) is dismissed as untimely in its entirety.

**Count X** (unjust enrichment) is dismissed as untimely in its entirety.

Count X is dismissed for failure to state a claim, for the reasons discussed above. The existence of a binding contract means that Plaintiffs cannot bring a claim for unjust enrichment.

## Conclusion

For those reasons, McDonald's motion to dismiss is granted in part and denied in part.

Date: September 21, 2026

Steven C. Seeger
United States District Judge

APPEAL,PROTO,VALDEZ

# United States District Court
# Northern District of Illinois - CM/ECF NextGen 1.9 (rev. 1.9) (Chicago)
# CIVIL DOCKET FOR CASE #: 1:23-cv-00210
# Internal Use Only

Manning et al v. McDonald's USA, LLC et al
Assigned to: Honorable Steven C. Seeger
Demand: $9,999,000
related Case: 1:20-cv-05132
Cause: 28:1331 Federal Question

Date Filed: 01/13/2023
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Kenneth Manning**

represented by **Annie Davey Prossnitz**
Kaplan & Grady
2071 N. Southport Ave.
Ste. 205
Chicago, IL 60614
312-852-2184
Email: prossnitz@kaplangrady.com
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
Loevy & Loevy
2060 Broadway
Suite 280
Boulder, CO 80302
720-583-6514
Fax: Active
Email: dan@loevy.com
*ATTORNEY TO BE NOTICED*

**Megan Porter**
PO Box 408246
Chicago, IL 60607
440-728-5269
Email: port.cjm@gmail.com
*TERMINATED: 09/16/2024*

**Quinn Rallins**
Loevy & Loevy
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
Fax: Not a member
Email: rallins@loevy.com
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
Loevy & Loevy
311 N. Aberdeen St.
3rd Floor
Chicago, IL 60607
312 243 5900
Fax: Not a member
Email: steve@loevy.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christine Crawford** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Keith Manning** represented by **Jonathan I. Loevy**
Loevy & Loevy
311 N. Aberdeen
3rd FL
Chicago, IL 60607
(312)243-5900
Fax: Active
Email: jon@loevy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Delores Crawford** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Van Jakes** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Annis Alston-Staley** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Harry Staley** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Bonner** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Larry Brown** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Benny Clark** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eleanor Clark** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Glenda Claypool** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Juneth Daniel** | represented by | **Annie Davey Prossnitz**<br>(See above for address)<br>*TERMINATED: 03/25/2025*<br><br>**Daniel Moore Twetten**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Megan Porter**<br>(See above for address)<br>*TERMINATED: 09/16/2024*<br><br>**Quinn Rallins**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Steven Edwards Art**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff** | | |
| **Yves Dominique** | represented by | **Annie Davey Prossnitz**<br>(See above for address)<br>*TERMINATED: 03/25/2025*<br><br>**Daniel Moore Twetten**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Megan Porter**<br>(See above for address)<br>*TERMINATED: 09/16/2024*<br><br>**Quinn Rallins**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Steven Edwards Art**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Plaintiff** | | |
| **Wise Finley** | represented by | **Annie Davey Prossnitz**<br>(See above for address)<br>*TERMINATED: 03/25/2025*<br><br>**Daniel Moore Twetten**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Megan Porter** |

(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jacqueline George** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Anthony George** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wesley Hall** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Al Harris** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kristen Harris** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lawrence Holland** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Douglas Hollis** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Glenna Hollis** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Laetittia Johnson** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Harold Lewis** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeremy Lewis** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joseph Mbanefo** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Scott Miller** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dwight Miller** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dawn Mussenden** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**William Rasul** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dwayne Richard Johnson** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**

(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeffery Rogers** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carrie Salone** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeremiah Simmons** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Floyd Sims** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Allen Stafford** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ronnie Thornton** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Errol Thybulle** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lance Williams** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jacq Wynn** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mitchell McGuire** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Tweetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lois McGuire** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Tweetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gordon Thornton** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Tweetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Serge Tancrede** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Karen Tancrede** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**William (Pete) Washington** represented by **Annie Davey Prossnitz**
(See above for address)
*TERMINATED: 03/25/2025*

**Daniel Moore Twetten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Megan Porter**
(See above for address)
*TERMINATED: 09/16/2024*

**Quinn Rallins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Edwards Art**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**McDonald's USA, LLC**
*a Delaware limited liability company*

represented by **Loretta E. Lynch**
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
Fax: Not a member
Email: lelynch@paulweiss.com
*TERMINATED: 04/04/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Patricia Brown Holmes**
Riley Safer Holmes & Cancila LLP
1 South Dearborn Street
Suite 2200
Chicago, IL 60603
312-471-8745
Fax: Active
Email: pholmes@rshc-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy C. Andrews**
Riley Safer Holmes & Cancila LLP
2900
1 South Dearborn Street

Suite 2200
Chicago, IL 60603
312-404-3930
Email: aandrews@rshc-law.com
*ATTORNEY TO BE NOTICED*

**Ariel Schepers Wilson**
Riley Safer Holmes & Cancila LLP
2723 South State Street
Suite 150
Ann Arbor, MI 48104
734-773-4914
Fax: 734-773-4901
Email: AWilson@rshc-law.com
*ATTORNEY TO BE NOTICED*

**Kaleigh Barrett**
Riley Safer Holmes and Cancila LLP
1 South Dearborn St.
Suite 2200
Chicago, IL 60603
(312) 471-8782
Fax: Not a member
Email: kbarrett@rshc-law.com
*ATTORNEY TO BE NOTICED*

**Mary Laird**
Riley Safer Holmes & Cancila LLP
1 South Dearborn Street
Suite 2200
Chicago, IL 60603
312-471-8688
Fax: Active
Email: mlaird@rshc-law.com
*ATTORNEY TO BE NOTICED*

**Nathan A. Shine**
Riley Safer Holmes & Cancila LLP
1 South Dearborn Street
Suite 2200
Chicago, IL 60603
312-471-8684
Email: nshine@rshc-law.com
*ATTORNEY TO BE NOTICED*

**Susanna M. Buergel**
Paul, Weiss, Rifkind, Wharton & Garrison Llp
1285 Avenue Of The Americas
New York, NY 10019
(202) 373-3000

Fax: Pro Hac Vice
Email: sbuergel@paulweiss.com
*TERMINATED: 04/04/2025*
*PRO HAC VICE*

**Defendant**

**McDonald's Corporation**
*a Delaware corporation*

represented by **Loretta E. Lynch**
(See above for address)
*TERMINATED: 04/04/2025*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Patricia Brown Holmes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy C. Andrews**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ariel Schepers Wilson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kaleigh Barrett**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mary Laird**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nathan A. Shine**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Susanna M. Buergel**
(See above for address)
*TERMINATED: 04/04/2025*
*PRO HAC VICE*

| Date Filed | # | Select all / clear | Docket Text |
|---|---|---|---|
| 01/13/2023 | | | (Court only) Related cases: Create association to 1:20-cv-05132. (kl, ) (Entered: 01/13/2023) |
| 01/13/2023 | | | (Court only) Judge Honorable Steven C. Seeger added. (kl, ) (Entered: 01/23/2023) |

| | | | |
|---|---|---|---|
| 01/20/2023 | 1 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The Court finds the filing fee is hereby waived. Mailed notice. (jjr, ) (Entered: 01/20/2023) |
| 01/20/2023 | 2 | ☐ | COMPLAINT filed by William Rasul, Dawn Mussenden, Harry Staley, Laetittia Johnson, Anthony George, Christine Crawford, Kenneth Manning, Wesley Hall, Scott Miller, Jacqueline George, Mitchell McGuire, Harold Lewis, Glenna Hollis, Jeremy Lewis, Ronnie Thornton, Yves Dominique, William (Pete) Washington, Douglas Hollis, Benny Clark, Dwight Miller, Jeffery Rogers, Eleanor Clark, Karen Tancrede, Lance Williams, Kristen Harris, Gordon Thornton, Juneth Daniel, Lawrence Holland, Joseph Mbanefo, Annis Alston-Staley, Allen Stafford, Carrie Salone, Keith Manning, Larry Brown, Errol Thybulle, Glenda Claypool, Serge Tancrede, Wise Finley, Floyd Sims, Robert Bonner, Delores Crawford, Dwayne Richard Johnson, Jeremiah Simmons, Lois McGuire, Jacq Wynn, Al Harris, Van Jakes; Jury Demand. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(kl, ) (Entered: 01/23/2023) |
| 02/24/2023 | 3 | ☐ | STATUS Report *re Statute of Limitations Project, Filed Jointly* by McDonald's Corporation, McDonald's USA, LLC (Attachments: # 1 Exhibit A - Manning Spreadsheet, # 2 Exhibit B - Manning Position Statement, # 3 Exhibit C - Defendants' Spreadsheet)(Holmes, Patricia) (Entered: 02/24/2023) |
| 02/27/2023 | 4 | ☐ | ATTORNEY Appearance for Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn by Steven Edwards Art (Art, Steven) (Entered: 02/27/2023) |
| 02/27/2023 | 5 | ☐ | ATTORNEY Appearance for Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn by Daniel Moore Twetten (Twetten, Daniel) (Entered: 02/27/2023) |

| | | | |
|---|---|---|---|
| 02/27/2023 | 6 | ▢ | ATTORNEY Appearance for Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn by Quinn Rallins (Rallins, Quinn) (Entered: 02/27/2023) |
| 02/27/2023 | 7 | ▢ | ATTORNEY Appearance for Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn by Annie Davey Prossnitz (Prossnitz, Annie) (Entered: 02/27/2023) |
| 02/27/2023 | 8 | ▢ | MINUTE entry before the Honorable Steven C. Seeger: The Court reviewed the joint status report about the statute of limitations, as well as the accompanying spreadsheets. (Dckt. No. 3 ). This Court directed the parties to "pin down" when each Plaintiff left the McDonald's system. In particular, this Court directed Plaintiffs' counsel to "serve a user-friendly table or spreadsheet that identifies, with specificity," the date "when each particular Plaintiff left the McDonald's franchise system." The spreadsheet offered by the Manning Plaintiffs was better than the spreadsheet offered by the Crawford Plaintiffs (20-cv-5132). The Manning Plaintiffs offered the months and years when they exited from the system. In a franchise context, it is usually easy to pin down when, exactly, the franchisor/ franchisee relationship ended. It is not the sort of thing that is left up in the air or loosey-goosey. It presumably is written down in a franchise agreement, or some other contract. McDonald's offered more specifics than any of the Plaintiffs, in either case, by offering the specific dates and pointing to the "Defendants' Documented Exit Date." (Dckt. No. [3-3]). That's what this Court had in mind (and directed). By March 15, 2023, McDonald's must produce documents supporting the departure dates in its spreadsheet. Plaintiffs must serve a responsive spreadsheet by March 29, 2023. For each Plaintiff, if Plaintiffs has reason to dispute the dates in the spreadsheet by McDonald's, Plaintiffs must explain why. The parties must meet and confer, and must file an updated status report with the accompanying spreadsheets by April 5, 2023. The Court expects compliance in good faith. The Court offers one last observation. The |

| | | | |
|---|---|---|---|
| | | | parties stated that they "disagree over... whether such issues are ripe for resolution at the motion to dismiss stage prior to discovery." (Dckt. No. 90 ). The issue is ripe because the Court said that it is ripe. Or, at the very least, this Court will help it ripen on the vine. District courts have expansive authority to manage their dockets, streamline cases, and narrow the issues as they see fit. That power can include trimming cases of claims that do not belong, and that are destined to hit the exits of the courthouse. There is no point in having time-barred claims hang around, because they will simply add dead weight to the case. The Court wants to get to the bottom of this issue sooner rather than later, before consuming untold resources for potentially time-barred claims. It is true that the statute of limitations is an affirmative defense, and that the statute of limitations is not normally an issue at the motion-to-dismiss stage (unless the face of the complaint shows that it is time barred). Even so, the Federal Rules allow early motions for summary judgment. And, this Court has the discretion to authorize multiple rounds of summary judgment motions, including an early motion for summary judgment on the statute of limitations, and a later motion for summary judgment on everything else. Plaintiffs point to a possible argument about tolling, but that's neither here nor there. Step one is to figure out if something needs to be tolled in the first place. So, the Court directs all parties to engage in this process in good faith. A failure to comply will lead to appropriate relief. Emailed notice (cdh, ) (Entered: 02/27/2023) |
| 03/15/2023 | 9 | ☐ | MOTION by Defendants McDonald's Corporation, McDonald's USA, LLC for protective order *(Joint Motion)* (Holmes, Patricia) (Entered: 03/15/2023) |
| 03/20/2023 | 10 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The joint motion for a protective order for the statute of limitations project (Dckt. No. 9 ) is hereby granted. Confidentiality Order to follow. Mailed notice (jjr, ) (Entered: 03/20/2023) |
| 03/20/2023 | 11 | ☐ | AGREED JOINT CONFIDENTIALITY ORDER FOR THE STATUTE OF LIMITATIONS PROJECT Signed by the Honorable Steven C. Seeger on 3/20/2023. Mailed notice. (jjr, ) (Entered: 03/20/2023) |
| 03/28/2023 | 12 | ☐ | ATTORNEY Appearance for Defendants McDonald's Corporation, McDonald's USA, LLC by Ariel Schepers Wilson (Wilson, Ariel) (Entered: 03/28/2023) |
| 03/28/2023 | 13 | ☐ | ATTORNEY Appearance for Defendants McDonald's Corporation, McDonald's USA, LLC by Amy C. Andrews (Andrews, Amy) (Entered: 03/28/2023) |
| 03/28/2023 | 14 | ☐ | MOTION by Defendants McDonald's Corporation, McDonald's USA, LLC for leave to file excess pages *in Support of 12(b) Motion to Dismiss the Second Amended Complaint* (Wilson, Ariel) (Entered: 03/28/2023) |
| 03/29/2023 | 15 | ☐ | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-20489827. (Lynch, Loretta) (Entered: 03/29/2023) |
| 03/29/2023 | 16 | ☐ | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-20489867. (Buergel, Susanna) (Entered: 03/29/2023) |

| | | | |
|---|---|---|---|
| 03/31/2023 | 17 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The motions to appear pro hac vice (Dckt. Nos. 15 , 16 ) are granted. Attorney Loretta E. Lynch and Susanna M. Buergel are added as counsel for McDonald's Corporation and McDonald's USA, LLC. Mailed notice. (jjr, ) (Entered: 03/31/2023) |
| 03/31/2023 | 18 | ☐ | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants McDonald's Corporation, McDonald's USA, LLC (Holmes, Patricia) (Entered: 03/31/2023) |
| 03/31/2023 | 19 | ☐ | MEMORANDUM by McDonald's Corporation, McDonald's USA, LLC in support of Motion to Dismiss for Failure to State a Claim 18 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Holmes, Patricia) (Entered: 03/31/2023) |
| 04/03/2023 | 20 | ☐ | ATTORNEY Appearance for Defendants McDonald's Corporation, McDonald's USA, LLC by Loretta E. Lynch (Lynch, Loretta) (Entered: 04/03/2023) |
| 04/03/2023 | 21 | ☐ | ATTORNEY Appearance for Defendants McDonald's Corporation, McDonald's USA, LLC by Susanna M. Buergel (Buergel, Susanna) (Entered: 04/03/2023) |
| 04/05/2023 | 22 | ☐ | STATUS Report *re Statute of Limitations Project, Filed Jointly* by McDonald's Corporation, McDonald's USA, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Holmes, Patricia) (Entered: 04/05/2023) |
| 04/06/2023 | 23 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: Defendant's motion for excess pages (Dckt. No. 14 ) is hereby granted. The response to the motion to dismiss is due by May 5, 2023. The reply is due by May 26, 2023. Mailed notice (jjr, ) (Entered: 04/06/2023) |
| 04/13/2023 | 24 | ☐ | MINUTE entry before the Honorable Maria Valdez: Attorneys-only settlement conference held on 4/13/23. The Court concludes that a full settlement conference would not be fruitful. If the parties wish to schedule another conference at any time, they may request a referral from the District Judge. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. Mailed notice (lp, ) (Entered: 04/13/2023) |
| 05/01/2023 | 25 | ☐ | MOTION by Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn for extension of time *of Current Briefing Schedule (Joint)*, MOTION by Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony |

| | | | |
|---|---|---|---|
| | | | George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn for leave to file excess pages *for the Opposition and Reply Briefs to Defendants' Motions to Dismiss (Joint)* (Loevy, Jonathan) (Entered: 05/01/2023) |
| 05/03/2023 | 26 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The joint motion for extension of time and for an expansion of briefing page limits (Dckt. No. 25 ) is hereby granted. The response to the motion to dismiss is due by June 5, 2023. The reply is due by June 30, 2023. Mailed notice. (jjr, ) (Entered: 05/03/2023) |
| 05/05/2023 | 27 | ☐ | ATTORNEY Appearance for Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn by Megan Porter (Porter, Megan) (Entered: 05/05/2023) |
| 05/30/2023 | 28 | ☐ | ATTORNEY Appearance for Defendants McDonald's Corporation, McDonald's USA, LLC by Mary Laird (Laird, Mary) (Entered: 05/30/2023) |
| 06/05/2023 | 29 | ☐ | RESPONSE by Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynnin Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants McDonald's Corporation, McDonald's USA, LLC 18 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Art, Steven) (Entered: 06/05/2023) |

| | | | |
|---|---|---|---|
| 06/20/2023 | 30 | ☐ | RESPONSE by Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynnin Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants McDonald's Corporation, McDonald's USA, LLC 18 *(Amended)* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Art, Steven) (Entered: 06/20/2023) |
| 07/14/2023 | 31 | ☐ | REPLY by Defendants McDonald's Corporation, McDonald's USA, LLC *In Support of Its Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint 18* (Andrews, Amy) (Entered: 07/14/2023) |
| 12/28/2023 | 32 | ☐ | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/28/2023: Mailed notice. (tg, ) (Entered: 12/29/2023) |
| 02/01/2024 | 33 | ☐ | McDonald's USA, LLC's Rule 7.1 and Local Rule 3.2 Corporate Disclosure Statement STATEMENT by McDonald's USA, LLC (Andrews, Amy) (Entered: 02/01/2024) |
| 02/01/2024 | 34 | ☐ | McDonald's Corporation's Rule 7.1 and Local Rule 3.2 Corporate Disclosure Statement STATEMENT by McDonald's Corporation (Andrews, Amy) (Entered: 02/01/2024) |
| 07/26/2024 | 35 | ☐ | NOTICE by Mary Laird of Change of Address *for Riley Safer Holmes & Cancila LLP* (Laird, Mary) (Entered: 07/26/2024) |
| 09/13/2024 | 36 | ☐ | MOTION by Attorney Megan Porter to withdraw as attorney for Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, |

| | | | |
|---|---|---|---|
| | | | Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn. No party information provided<br><br>(Prossnitz, Annie) (Entered: 09/13/2024) |
| 09/13/2024 | 37 | ☐ | MOTION by Attorney Megan Porter to withdraw as attorney for Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn. No party information provided<br><br>(Prossnitz, Annie) (Entered: 09/13/2024) |
| 09/16/2024 | 38 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The motions for leave to withdraw (Dckt. No. 36 and 37 ) are granted. Attorney Megan Porter is hereby terminated as counsel of record. Mailed notice. (jjr, ) (Entered: 09/16/2024) |
| 11/12/2024 | 39 | ☐ | MOTION by Plaintiff Kenneth ManningNOTICE OF SUPPLEMENTAL AUTHORITY<br><br>(Attachments: # 1 Exhibit)(Prossnitz, Annie) (Entered: 11/12/2024) |
| 11/13/2024 | 40 | ☐ | Notice of Supplemental Authority by Benny Clark, Eleanor Clark, Glenda Claypool, Juneth Daniel, Yves Dominique, Wise Finley, Jacqueline George, Anthony George, Wesley Hall, Al Harris, Kenneth Manning, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Joseph Mbanefo, Christine Crawford, Scott Miller, Dwight Miller, Dawn Mussenden, William Rasul, Dwayne Richard Johnson, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Keith Manning, Ronnie Thornton, Errol Thybulle, Lance Williams, Jacq Wynn, Mitchell McGuire, Lois McGuire, Gordon Thornton, Serge Tancrede, Karen Tancrede, William (Pete) Washington, Delores Crawford, Van Jakes, Annis Alston-Staley, Harry Staley, Robert Bonner, Larry Brown *CORRECTED Notice of Supplemental Authority* (Attachments: # 1 Exhibit)(Prossnitz, Annie) (Entered: 11/13/2024) |

| | | | |
|---|---|---|---|
| 12/18/2024 | 41 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The motion to submit the notice of supplemental authority (Dckt. No. 39 ) is hereby granted. Mailed notice. (jjr, ) (Entered: 12/18/2024) |
| 12/27/2024 | 42 | ☐ | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/27/2024: Mailed notice. (tg, ) (Entered: 12/28/2024) |
| 01/06/2025 | 43 | ☐ | MOTION by Defendants McDonald's USA, LLC, McDonald's Corporation for leave to file *Response to Plaintiffs' Notice of Supplemental Authority*<br><br>(Attachments: # 1 Exhibit A)(Andrews, Amy) (Entered: 01/06/2025) |
| 01/06/2025 | 44 | ☐ | NOTICE of Motion by Amy C. Andrews for presentment of motion for leave to file 43 before Honorable Steven C. Seeger on 1/21/2025 at 09:00 AM. (Andrews, Amy) (Entered: 01/06/2025) |
| 01/07/2025 | 45 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: Defendants' motion for leave to file response to Plaintiffs' notice of supplemental authority (Dckt. No. 43 ) is hereby granted. Mailed notice. (jjr, ) (Entered: 01/07/2025) |
| 01/07/2025 | 46 | ☐ | RESPONSE by Defendants McDonald's USA, LLC, McDonald's Corporation to other,,, 40 *Plaintiffs' Notice of Supplemental Authority* (Andrews, Amy) (Entered: 01/07/2025) |

| | | | |
|---|---|---|---|
| 03/24/2025 | 47 | ☐ | MOTION by Attorney Annie Prossnitz to withdraw as attorney for Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn. No party information provided<br><br>(Art, Steven) (Entered: 03/24/2025) |
| 03/25/2025 | 48 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The motion for leave to withdraw (Dckt. No. 47 ) is hereby granted. Attorney Annie Davey Prossnitz is terminated as counsel of record. Mailed notice. (jjr, ) (Entered: 03/25/2025) |
| 04/03/2025 | 49 | ☐ | MOTION by Attorney Loretta E. Lynch and Susanna M. Buergel to withdraw as attorney for McDonald's Corporation, McDonald's USA, LLC. No party information provided<br><br>(Lynch, Loretta) (Entered: 04/03/2025) |
| 04/04/2025 | 50 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The motion to withdraw (Dckt. No. 49 ) is granted. Attorney Susanna M. Buergel and Loretta E. Lynch are terminated as counsel of record. Mailed notice. (jjr, ) (Entered: 04/04/2025) |
| 09/19/2025 | 51 | ☐ | NOTICE OF SUPPLEMENTAL AUTHORITY by Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn<br><br>(Twetten, Daniel) (Docket Entry Modified on 9/22/2025) (jjr, ). (Entered: 09/19/2025) |
| 09/19/2025 | 52 | ☐ | MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO OPEN DISCOVERY by Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, |

| | | | |
|---|---|---|---|
| | | | Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn<br><br>(Twetten, Daniel) (Docket Text Modified on 9/22/2025) (jjr, ). (Entered: 09/19/2025) |
| 09/22/2025 | | | (Court only) ***Motions terminated: Docket entries 51 and 52 filed incorrectly as MOTION to open discovery and MOTION for Supplemental Authority by Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harri. (jjr, ) (Entered: 09/22/2025) |
| 10/02/2025 | 53 | | MOTION by Defendants McDonald's Corporation, McDonald's USA, LLC for leave to file *response to Plaintiffs' notice of supplemental authority*<br><br>(Attachments: # 1 Exhibit A)(Andrews, Amy) (Entered: 10/02/2025) |
| 10/02/2025 | 54 | | MOTION by Defendants McDonald's Corporation, McDonald's USA, LLC for leave to file *response to Plaintiffs' discovery memorandum*<br><br>(Attachments: # 1 Exhibit A)(Andrews, Amy) (Entered: 10/02/2025) |
| 10/21/2025 | 55 | | MINUTE entry before the Honorable Steven C. Seeger: The motions for leave to file a response (Dckt. Nos. 53 , 54 ) are hereby granted. The Court grants McDonald's leave to file the responses on the docket within one week of entry of this order. Mailed notice. (jjr, ) (Entered: 10/21/2025) |
| 10/23/2025 | 56 | | RESPONSE by Defendants McDonald's Corporation, McDonald's USA, LLC *to Plaintiffs' Notice of Supplemental Authority 51* (Andrews, Amy) (Entered: 10/23/2025) |
| 10/23/2025 | 57 | | RESPONSE by Defendants McDonald's Corporation, McDonald's USA, LLC *to Plaintiffs' Memorandum Regarding Discovery Stay 52* (Andrews, Amy) (Entered: 10/23/2025) |
| 12/31/2025 | 58 | | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being |

| | | | |
|---|---|---|---|
| | | | issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/31/2025: Mailed notice. (tg, ) (Entered: 01/05/2026) |
| 02/06/2026 | 59 | ☐ | SUGGESTION of Death as to Doug Hollis (Rallins, Quinn) (Entered: 02/06/2026) |
| 04/20/2026 | 60 | ☐ | ATTORNEY Appearance for Defendants McDonald's Corporation, McDonald's USA, LLC by Nathan A. Shine (Shine, Nathan) (Entered: 04/20/2026) |
| 04/22/2026 | 61 | ☐ | MOTION by Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynnto Lift Stay<br><br>(Loevy, Jonathan) (Entered: 04/22/2026) |
| 04/27/2026 | 62 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The Court sets a status hearing forApril 28, 2026 at 10:00 a.m. Mailed notice. (jjr, ) (Entered: 04/27/2026) |
| 04/28/2026 | 63 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: This Court presided over a status hearing on April 28, 2026, and discussed the path forward in light of this Court's recent decision in a related case, McPherson v. McDonald's USA, LLC, et. al, 23-cv-2913 (Dckt. No. 43). As discussed at the hearing, this Court recently issued a ruling in McPherson that granted in part and denied in part Defendants' motion to dismiss McPherson's complaint. That ruling will go a long way toward resolving the motion to dismiss in this case, too, because the Plaintiffs raised similar claims, and the Defendants made similar arguments, in both cases. The principles that this Court adopted in its motion to dismiss ruling in McPherson will equally apply to the case at hand (to the extent that the claims are the same, anyway). To solidify the point, the Court makes the following rulings about the motion to dismiss in this case. First, any individual pattern-or-practice claims are dismissed. Second, the statute-of-limitations analysis from McPherson applies to any differential-treatment claims under section 1981. Specifically: (1) the claims are dismissed to the extent that they involve pre-contract-formation conduct that took place more than two years before the filing of the complaint; and (2) the claims are dismissed to the extent that they involve post-contract-formation conduct that took place more than four years before the filing of the complaint. Third, the statute-of-limitations analysis from McPherson applies to any differential-treatment |

| | | | |
|---|---|---|---|
| | | | claims under section 1982. Specifically, the section 1982 claims are dismissed to the extent that they involve either pre-contract conduct or post-contract formation conduct that took place more than two years before the complaint. Fourth, any breach-of-contract claims based on Section 12 or Section 15 of the Franchise Agreement are dismissed, assuming that Plaintiffs made the same claim under the same provisions (unless one of the other Plaintiffs invokes different contractual language in those sections of the Franchise Agreement). But a claim for breach of contract under Section 3 of the Franchise Agreement may survive, as long as Plaintiffs' allegations fall within Illinois's 10-year statute of limitations (unless there is some other flaw with the claim). Mailed notice (jjr, ) (Entered: 04/28/2026) |
| 04/28/2026 | 64 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: At the status hearing on April 28, 2026, this Court outlined a procedure for chipping away at the motions to dismiss. As the parties are well aware, the second amended complaint spans 158 pages, and includes claims by dozens of franchisees. (Dckt. No. 2 ) Many of the claims include allegations about old conduct, which creates a heavy lift from a statute-of-limitations perspective. At the hearing, this Court assembled some cranes for the heavy lifting. The basic idea is to apply the ruling in McPherson to the claims by the dozens of Plaintiffs in the case at hand. This Court envisions a later ruling that addresses the facts of each claim by each plaintiff, and specifies what's timely and what's not. For example, this Court might rule that Franchisee Bob's section 1981 claim in Count II is timely to the extent that it involves Conduct A, but is untimely to the extent that it involves Conduct B. To get there, this Court needs additional help from the parties to apply the principles of McPherson to each one of the dozens of plaintiffs in this case. To that end, the parties must address, on a plaintiff-by-plaintiff and count-by-count basis, the allegations of the complaint. The parties must address whether those allegations are time-barred in light of this Court's ruling in McPherson. Specifically, by May 8, 2026 (this Court added a few days), Plaintiffs in the King case and the Manning case must exchange summaries of the allegations by the first five plaintiffs in each case (only), in the order that they appear in the respective complaints. So, the King plaintiffs will prepare a summary of the allegations of the first five plaintiffs in King, and the Manning plaintiffs will prepare a summary of the allegations of the first five plaintiffs in Manning. The summaries will address the allegations of each plaintiff (on a plaintiff-by-plaintiff, count-by-count basis), and will address whether the allegations are timely in light of McPherson. This Court will not dictate how, exactly, the summary should look. Maybe a chart makes sense (as long as it is readable to the human eye). Or maybe there is a better way to convey the information. But this Court is hoping that the Plaintiffs can isolate the allegations that are too old, and the allegations that continue to raise timely claims, and present them in a digestible format. The goal is a plaintiff-by-plaintiff summary that addresses each discrete allegation by category (e.g., allegations about racial steering in 2010, or whatever the claim may be), and makes it easy to see what's in and what's out. After the initial exchange, the Court encourages the Plaintiffs in King and Manning to meet and confer and figure out the most effective way to present the information from a |

| | | | |
|---|---|---|---|
| | | | formatting and readability perspective. Then, the King Plaintiffs and the Manning Plaintiffs will send separate summaries to the Defendants (and include a copy of the document in native format, too, such as a file in Word or Excel). Plaintiffs must provide their respective submissions to the Defendants by May 15. Then, Defendants must respond by June 5, which is three weeks after receiving the submissions from the Plaintiffs (this Court added a week, in light of Memorial Day). If Defendants disagree with the submissions from the Plaintiffs, and believe that additional allegations are time barred, then the Defendants must respond with a summary of their own, or maybe a revised version of the summary from Plaintiffs. Basically, Defendants must give Plaintiffs a response that addresses what's old and what's timely, if Defendants disagree with what they received from Plaintiffs. At that point, the parties must meet and confer. By June 22, the parties must file a joint document that summarizes their agreement and the areas of any dispute. At that point, this Court can issue a ruling on the timeliness of any disputed allegations. For now, the Court will start with the first five plaintiffs. This Court will give it a go, and see how it goes, before addressing the other plaintiffs. This Court can handle other plaintiffs in other tranches (to follow). But hopefully doing things in bite-sized pieces will make things easier to swallow and digest. In the meantime, all discovery in King and Manning is stayed. Mailed notice (jjr, ) (Entered: 04/28/2026) |
| 04/28/2026 | 65 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The motion to lift the stay (Dckt. No. 61 ) is hereby denied. The stay will remain in effect until this Court resolves the motion to dismiss. Mailed notice (jjr, ) (Entered: 04/28/2026) |
| 06/22/2026 | 66 | ☐ | JOINT SUBMISSION APPLYING THE MCPHERSON STATUTE OF LIMITATIONS RULINGS TO MANNING PLAINTIFFS by Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn (Twetten, Daniel) (Entered: 06/22/2026) |
| 07/07/2026 | 67 | ☐ | ATTORNEY Appearance for Defendants McDonald's Corporation, McDonald's USA, LLC by Kaleigh Barrett (Barrett, Kaleigh) (Entered: 07/07/2026) |
| 07/09/2026 | 68 | ☐ | STATUS Report *(Joint)* by Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith |

| | | | |
|---|---|---|---|
| | | | Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn<br><br>(Art, Steven) (Entered: 07/09/2026) |
| 08/03/2026 | 69 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: This Court reviewed the joint status report (Dckt. No. 68 ). This Court also took a close look at the submissions from the parties applying this Court's ruling in McPherson (23-cv-2913) to the plaintiffs in the case at hand. As directed, the parties applied this Court's ruling in McPherson to the first five plaintiffs. The parties should keep going, and use the same format. This Court has two formatting suggestions. First, it might be helpful to add some numbering before the name of each individual plaintiff. So, for example, Kenneth Manning is the first plaintiff, and Christine Crawford is the second plaintiff, and so on. Something like "1. Plaintiff Kenneth Manning" or maybe ("Plaintiff #1: Kenneth Manning") might do to the trick. Second, each time the table covers a new plaintiff, a page break would help. The parties must file an updated table that covers all plaintiffs (including the first five plaintiffs) no later than four weeks from the date of entry of this order. Plaintiff must go first, and must submit an updated table covering all remaining plaintiffs to defense counsel no later than two weeks from the date of entry of this order. This Court assumes that counsel has continued to make progress on this project in the intervening weeks, and that this schedule is doable. But if this schedule proves to be too ambitious or unworkable for any reason, counsel can reach out as necessary. The goal is to make progress in an orderly manner, without creating any undue hardship for the parties or counsel. All discovery is stayed in the meantime. Mailed notice. (jjr, ) (Entered: 08/03/2026) |
| 09/01/2026 | 70 | ☐ | MOTION by Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn for extension of time *to File Submission Applying McPherson*<br><br>(Art, Steven) (Entered: 09/01/2026) |
| 09/02/2026 | 71 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The motion for extra time (Dckt. No. 70 ) is granted. Mailed notice (jjr, ) (Entered: 09/02/2026) |

| | | | |
|---|---|---|---|
| 09/02/2026 | 72 | ☐ | JOINT SUBMISSION APPLYING THE MCPHERSON STATUTE OF LIMITATIONS RULINGS TO MANNING PLAINTIFFS by Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn (Twetten, Daniel) (Entered: 09/02/2026) |
| 09/10/2026 | 73 | ☐ | MINUTE entry before the Honorable Steven C. Seeger: The Court reviewed the joint submission that applied the McPherson statute of limitations rulings to the 48 plaintiffs in the Manning case. (Dckt. No. 72 ) The Court thanks the parties for putting it together. The Court directs the parties to submit a Word version of the document to the proposed order inbox: proposed_order_seeger@ilnd.uscourts.gov by the end of the day tomorrow. Mailed notice. (jjr, ) (Entered: 09/10/2026) |
| 09/21/2026 | 74 | ☑ | MEMORANDUM Opinion and Order Signed by the Honorable Steven C. Seeger on 9/21/2026. For the foregoing reasons, McDonald's motion to dismiss (Dckt. No. 18 ) is granted in part and denied in part. Mailed notice. (jjr, ) (Entered: 09/21/2026) |
| 10/01/2026 | 75 | ☐ | MOTION by Defendants McDonald's Corporation, McDonald's USA, LLC for extension of time to file answer regarding complaint,,, 2 *Unopposed*<br><br>(Andrews, Amy) (Entered: 10/01/2026) |
| 10/08/2026 | 76 | ☐ | MOTION by Plaintiffs Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn TO AMEND TO DISMISS REMAINING CLAIMS WITH PREJUDICE<br><br>(Art, Steven) (Entered: 10/08/2026) |
| 10/15/2026 | 77 | ☐ | NOTICE of appeal by Annis Alston-Staley, Robert Bonner, Larry Brown, Benny Clark, Eleanor Clark, Glenda Claypool, Christine Crawford, Delores Crawford, Juneth Daniel, Yves Dominique, Wise Finley, Anthony George, Jacqueline George, Wesley Hall, Al Harris, Kristen Harris, |

| | | | |
|---|---|---|---|
| | | | Lawrence Holland, Douglas Hollis, Glenna Hollis, Van Jakes, Dwayne Richard Johnson, Laetittia Johnson, Harold Lewis, Jeremy Lewis, Keith Manning, Kenneth Manning, Joseph Mbanefo, Lois McGuire, Mitchell McGuire, Dwight Miller, Scott Miller, Dawn Mussenden, William Rasul, Jeffery Rogers, Carrie Salone, Jeremiah Simmons, Floyd Sims, Allen Stafford, Harry Staley, Karen Tancrede, Serge Tancrede, Gordon Thornton, Ronnie Thornton, Errol Thybulle, William (Pete) Washington, Lance Williams, Jacq Wynn regarding orders 74 Filing fee $ 605, receipt number AILNDC-25805832. Receipt number: n (Art, Steven) (Entered: 10/15/2026) |
| 10/19/2026 | 78 | ☐ | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal,,, 77 . (aee, ) (Entered: 10/19/2026) |

View Selected

or

Download Selected